[Civ. No. 5046. Third Appellate District.—May 15, 1934.]

PETER RUFFINO et al., Respondents, v. QUEEN INSURANCE COMPANY OF AMERICA (a Corporation), Appellant.

Miller, Van Ness & Leo J. McEnerney for Appellant.

Griffin & Boone for Respondents.

THOMPSON, J.—The defendant has appealed from a judgment of $2,714.80 which was rendered against it by the court sitting without a jury, in a suit upon an insurance policy for loss by fire of certain personal property.

Through its Stanislaus County agent, J. F. Campbell, the defendant insurance company, on September 26, 1930, on receipt of $67.50 which was paid as premium therefor,

issued to the plaintiffs jointly, as their interests appeared, a standard statutory form of fire insurance policy for $4,500, for the period of one year, on certain personal property owned by the plaintiff Ruffino, subject to a chattel mortgage of $1,000 held by the plaintiff Smith. The agent was informed and knew of the existence of the chattel mortgage, and at the request of plaintiffs, attached to the policy a rider in the following language: "It is understood and agreed that this policy is to insure Peter Ruffino and Paul Smith as their interests may appear. [Signed] J. F. Campbell, Agent." The policy provides in part that, "No officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy except by writing endorsed hereon or added hereto." It is further provided the policy shall become void "if the interest of the insured be other than unconditional and sole ownership", and that "unless otherwise provided by agreement in writing endorsed hereon or added hereto this company shall not be liable for loss or damage to any property insured hereunder while encumbered by a chattel mortgage", that "within sixty days after the commencement of the fire the insured shall render to the company at its main office in California named herein preliminary proof of loss consisting of a written statement signed and sworn to by him, setting forth, (a) his knowledge and belief as to the origin of the fire; (b) the interest of the insured and of all others in the property; (c) the cash value of the different articles or properties and the amount of loss thereon." On November 25, 1930, the personal property was destroyed by fire to the extent of the undisputed value represented by the amount of the judgment. Fraud was not charged either in procuring the policy or on account of the origin of the fire. The respondents failed to file proof of loss as provided by the policy, but the local agent of the insurance company was promptly informed of the loss by fire, and he agreed to and did notify the company thereof in writing, in response to which an adjuster was sent to Modesto, who personally investigated the claim of loss and instructed the plaintiffs to segregate the undamaged property from that which was damaged, and told the plaintiffs they would hear from the company later regarding the claim. The plaintiffs promptly segregated the property as requested, but heard

nothing further from the company regarding the matter until after the time had expired for filing the proof of loss. A few days after the fire occurred, Mr. Campbell, the defendant's agent, in the presence of both plaintiffs, and in response to an inquiry as to whether anything further was necessary to be done on their part to collect the insurance, replied, "No, that he had taken care of everything that was necessary." The plaintiff Smith testified that he afterwards saw the agent prior to the expiration of the time for filing proof of loss and was assured by him that his loss would be paid in full as his interest appeared. Mr. Smith then asked him "if there was any necessary papers to be signed to show evidence of the amount of the loss", to which he replied, "No, there was not, that he had taken care of everything . . . in communication with the San Francisco office." After more than ninety days had elapsed from the time of the fire, the company for the first time denied its liability, asserting that the policy was void for failure on the part of the plaintiffs to comply with its provisions. Suit was then commenced. The cause was tried by the court sitting without a jury. Findings were adopted favorable to the plaintiffs in accordance with the facts above recited. Judgment was rendered accordingly for the sum of $2,253.70, and interest amounting to $461.10, aggregating the sum of $2,714.80. From this judgment the defendant has appealed.

The appellant contends that the complaint fails to state facts sufficient to constitute a cause of action for the reasons that it affirmatively appears the insurance policy which is involved in this action is the standard statutory form prescribed by law, which provides that no officer or agent of the company shall have power to waive any provision or condition therein contained except by written consent, and that the plaintiffs are estopped from asserting that their failure to supply sworn proof of loss, or knowledge of the origin of the fire was waived by the conduct of the agent or otherwise. It is further asserted that the encumbrance of the property by a chattel mortgage renders the policy void. For these reasons it is claimed the demurrer should have been sustained and that the motion for judgment on the pleadings should have been granted.

The demurrer and motion for judgment on the pleadings were properly overruled. The complaint clearly alleges that the owner of the property and the mortgagee were jointly insured as their respective interests appear; that the company, through its agent, had full knowledge of the existence and nature of the mortgage and insured the property with that understanding; that a written rider was signed by the agent and attached to the policy in the following language, "it is understood and agreed that this policy is to insure Peter Ruffino and Paul Smith *as their interests may appear.*" The complaint further alleges facts which amount to a waiver on the part of the company of the provision of the policy requiring the insured to furnish sworn proof of loss within sixty days of the time the fire occurred.

The rules of law regarding the construction of the terms and conditions of a fire insurance policy are the same as they were prior to the adoption of a statutory form thereof by the legislature of California.

The evidence abundantly shows that the defendant's local agent, Mr. Campbell, had authority from his company to attach a signed rider to the policy consenting in its behalf to the chattel mortgage of the plaintiff Smith, and that that document was duly signed and attached to the policy in consonance with the authorization conferred by the language of the contract of insurance. Mr. Campbell was called by the plaintiffs as a witness, under the provisions of section 2055 of the Code of Civil Procedure, and testified to those facts. He said that he had instructions from the company to sign and attach riders to insurance policies authorizing the execution of chattel mortgages on insured property, and that he did so in this instance. He also notified the company at its home office in San Francisco that he had attached the rider to this policy authorizing the chattel mortgage. No objection to the rider was ever made by the company. The agent authorized his stenographer to sign his name to the rider, and she did so. The rider was therefore signed and attached in writing in the manner and form authorized by the policy. By inference, the policy of the insurance company authorized the encumbrance of insured property in this manner by specifically providing therein that "unless otherwise provided by agreement in writing endorsed hereon *or added hereto* this

company shall not be liable for loss or damage to any property insured hereunder while encumbered by a chattel mortgage.''

The authorization of the company to encumber the insured property by chattel mortgage is clearly inferred by the language of the rider that ''It is understood and agreed that this policy is to insure Peter Ruffino and Paul Smith *as their interests may appear.''* (*Home Ins. Co. of New York* v. *Scott,* 46 Fed. (2d) 10; *Atlas Reduction Co.* v. *New Zealand Ins. Co.,* 138 Fed. 497 [9 L. R. A. (N. S.) 433].) In the case last cited it is said:

''These riders were in the form and were attached in the manner provided for in the policies, and it is to be presumed, nothing to the contrary appearing, that the agent attaching them acted with full authority. The purpose in attaching them was to grant authority to encumber the property. The language used was that of the insurance companies and was sufficiently comprehensive for the purpose for which it was intended.''

A rider signed by the authorized agent of the company containing stipulations with respect to the contract of insurance, which is attached to the policy in a manner not inconsistent with the language therein contained, becomes a part of the original policy and will be construed in connection with the other provisions of the policy. (2 Cooley's Briefs on Insurance, 2d ed., p. 1011; 14 R. C. L., p. 933, sec. 107; *Burch* v. *Hartford Fire Ins. Co.,* 85 Cal. App. 542, 551 [259 Pac. 1108].)

The insured failed to present to the company sworn proof of loss within sixty days from the time the fire occurred, or at all, as required by the provisions of the policy. But there is ample evidence to support the findings of the court that this clause was waived by the conduct of the insurance company and its agents. Mr. Campbell, the local agent, was informed by the plaintiffs of the fire immediately after it occurred. He promptly notified the company thereof by communication with its main office at San Francisco, and an adjuster was sent at once to Modesto to investigate the circumstances and appraise the loss. The adjuster inspected the property and instructed the plaintiffs to segregate the undamaged property from that which was destroyed or damaged, saying they would hear

from the company later. The adjuster failed to return. The insured frequently thereafter interviewed the local agent, Campbell, inquiring about the delay and asking him if there was anything further they were required to do to obtain a settlement of the claim. Campbell told them "they are all right, you don't need to worry. . . . I have done everything that I know of, 'phoned them, wrote them letters'. . . . Q. Now, in any of these conversations did Mr. Campbell ever tell you he would take care of everything for you? A. Yes, sir. . . . He said he was taking care of everything." Mr. Smith testified that plaintiffs had a conversation with Campbell soon after the fire occurred in which they inquired regarding the delay on the part of the company in settling the claim, and asking him when the payment would be made. He said, "I asked him at that time if there was any necessary papers to be signed to show evidence of the amount of the loss, and he said no, there was not, that he had taken care of everything." Having failed to further inform the insured regarding the payment of the claim, after the sixty-day period for presenting sworn proof of the claim had expired, the plaintiffs wrote the company, and for the first time received a letter in reply in which the company denied its liability, saying that an investigation was being made by the Fire Underwriters regarding the origin of the fire, and that the insured had forfeited all claim to insurance compensation by failure to file the sworn proof of loss as required by the policy.

The foregoing conduct of the company and its agents naturally had the effect of deceiving the insured with respect to the necessity of filing sworn proof of loss, and undoubtedly led them to believe the company would attend to that matter and to all other preliminaries necessary to entitle them to compensation. This conduct of the company and its agents amounted to a waiver of the clause of the policy providing for a forfeiture of the contract for failure to file sworn proof of loss within sixty days from the date of the fire. It estops the company from asserting the defense of forfeiture of the policy on that account. (*Francis* v. *Iowa Nat. Fire Ins. Co.*, 112 Cal. App. 565 [297 Pac. 122]; 26 C. J., p. 393, sec. 507; 7 Cooley's Briefs on Insurance, 2d ed., p. 5990, sec. 13 (b); 14 R. C. L. p. 1155, sec. 335; 5 Joyce on Insurance, p. 5566, sec. 3355.)

In 7 Cooley's Briefs on Insurance, *supra,* it is said in that regard:

"Any acts by or conduct of the company which directly prevent the insured from complying with the conditions of his policy as to notice and proofs of loss or which induce him to believe that strict compliance will not be required will operate as a waiver of any default resulting from such acts or conduct."

It is said in 14 Ruling Case Law, page 1156, in that regard:

"It is also held that a provision limiting the power of any officer, agent, or other representative of the company, in the waiver of any provision or condition in the policy, does not supersede the law making the principal liable for the negligent, wrongful, or fraudulent act of its agent, or the law of equitable estoppel, and therefore that limitation may itself be waived by the company through its agent, acting within the apparent scope of his authority."

The necessity of first ascertaining the amount of loss and presenting the insurer with sworn proof thereof as a prerequisite to the maintenance of this action, was also waived. The policy provides in that regard: "No suit or action on this policy for the recovery of any claim shall be sustained, until after full compliance by the insured with all of the foregoing requirements, nor unless begun within fifteen months next after the commencement of the fire." The fire occurred November 25, 1930. In reply to a letter from the plaintiffs inquiring about its failure to pay the claim, the insurance company wrote them on February 6, 1931, in part as follows:

"As more than sixty days have elapsed since the fire occurred and no proofs of loss having been received by the company, it would appear that Peter Ruffino has forfeited any rights which he may have had under the policy on account of the fire which occurred on or about November 25th, 1930.

"Very truly yours,
"O. J. Rea,
"General Adjuster."

This suit was then commenced October 21, 1931. The proof of loss was not furnished, as previously stated, because

the plaintiffs were led to believe by the statements and conduct of defendant's agents that it was unnecessary to do so. The liability of the insurer is not waived by a breach of a provision of the standard form of policy on the part of the insured which is declared to be a prerequisite to the maintenance of a suit upon the contract, when that breach is caused by the fault of the insurance company or its agents. (26 C. J., p. 406, sec. 522; *Enfantino* v. *United States Fire Ins. Co.,* 116 Cal. App. 729 [3 Pac. (2d) 331]; *Bank of Anderson* v. *Home Ins. Co. of New York,* 14 Cal. App. 208, 219 [111 Pac. 507].) The insurer may not predicate an absolute denial of liability upon failure of the insured to file sworn proof of loss, which failure is caused by conduct or declarations which amount to a waiver thereof by the insurer.

Finally it is contended that since the adoption of a standard form of fire insurance policy by the legislature of California (Stats. 1909, p. 404; 2 Deering's Gen. Laws of 1931, p. 1878, Act 3735), the instrument is binding on the parties and must be construed as a statute and not as a contract, and that a breach of the terms thereof is not subject to waiver or equitable estoppel except as therein provided. In other words, it is urged that since the adoption of the statutory standard form of fire insurance policy in California, which provides that no officer, agent or other representative of an insurance company shall have power to waive any of the provisions or conditions of a policy except by a writing indorsed thereon or added thereto, oral evidence of waiver or equitable estoppel is incompetent by means of which to excuse a breach of the terms thereof. In support of that contention reputable authorities from other jurisdictions have been cited, with which we are not in accord. It would be an arduous and idle task to attempt to review these cases, since they are in direct conflict with numerous authorities from other states which do conform with our view of the law in that regard.

It is true that the question as to whether the adoption of the standard statutory form of insurance has abrogated the status of the policy as a contract, has not been directly presented to the courts of California for determination. Nevertheless, numerous cases have been decided in this state since the adoption of the standard form, which recognize the fact that the policy is still deemed to be a contract. (23 C. J.,

p. 1147, sec. 257; *American Building Maintenance Co.* v. *Indemnity Ins. Co.,* 214 Cal. 608, 615 [7 Pac. (2d) 305]; *Boyer* v. *United States F. & G. Co.,* 206 Cal. 273 [274 Pac. 57]; *Bassi* v. *Springfield Fire etc. Ins. Co.,* 57 Cal. App. 707, 712 [208 Pac. 154]; *Mauck* v. *Northwestern Nat. Ins. Co.,* 102 Cal. App. 510 [283 Pac. 338]; *Wong* v. *Stuyvesant Ins. Co.,* 100 Cal. App. 109 [179 Pac. 1050]; *Kavanaugh* v. *Franklin Fire Ins. Co.,* 185 Cal. 307 [197 Pac. 99].)

Section 2586 of the Civil Code recognizes an insurance policy as a contract. It provides: "The written instrument, in which a *contract* of insurance is set forth, is called a policy of insurance." The fact that a fire policy is a standard form prescribed by statute does not alter its status as a contract. It must nevertheless be construed as such. (2 Cooley's Briefs on Insurance, 2d ed., p. 968; 1 Joyce on Insurance, 2d ed., p. 546, sec. 206a; 32 C. J., p. 1093, sec. 177; *Gazzam* v. *German Union Fire Ins. Co.,* 155 N. C. 330 [71 S. E. 434, Ann. Cas. 1912C, 362].) 2 Cooley's Briefs on Insurance, *supra,* says in that regard:

"The fact that a fire policy is a standard form prescribed by statute does not alter its status as a contract, which must be construed by the rules of construction usually applied to insurance contracts."

This text is supported by numerous authorities from many jurisdictions. In 1 Joyce on Insurance, *supra,* it is said:

"Although a standard form of policy is prescribed by statute, nevertheless upon its acceptance by the parties it becomes a voluntary contract between them which derives its force and efficacy from their consent. It constitutes their contract, and must be construed by the sames rules as similar contracts voluntarily entered into."

In 32 C. J., *supra,* it is said:

"A policy in the standard form prescribed by statute is to be treated, not as a legislative enactment, but as a voluntary contract."

The case of *Gazzam* v. *German Union Fire Ins. Co., supra,* quotes with approval from *Quinlan* v. *Providence Washington Ins. Co.,* 133 N. Y. 365 [31 N. E. 31, 28 Am. St. Rep. 645], in that regard, as follows:

"Now, as heretofore, it is competent for the parties to a contract of insurance, by agreement in writing or by parol,

to modify the contract after the policy has been issued, or to waive conditions or forfeitures."

The Gazzam case further quotes with approval from Vance on Insurance, at page 430 thereof, as follows:

"While many of the unfair features of the earlier policies have been eliminated from the modern standard policy, the courts still apply to this instrument the same rules of construction as the considerations just mentioned led them to apply to the old forms."

In enacting the California standard form of fire insurance policy and making it a misdemeanor to execute a contract of insurance without compliance therewith, it was evidently the intention of the legislature to protect the insured against highly technical and involved provisions which were inserted in lengthy and intricate policies by the skilled representatives of insurance corporations, which became traps for the unwary and frequently resulted in unjust forfeitures. It is said in that regard in the case of *Heim* v. *American Alliance Ins. Co.*, 147 Minn. 283 [180 N. W. 225, 226, 1022]:

"The statute is founded on public policy. It was enacted to do away with the evils arising from the insertion in policies of insurance of conditions ingeniously worded, which restricted the liability of the insurer and gave the insured less protection than he might naturally suppose he was getting under his contract."

Regarding the purpose of the legislatures in adopting a statutory form of policy, the Gazzam case, *supra*, quotes from *Armstrong* v. *Western Manufacturers' Mut. Ins. Co.*, 95 Mich. 139 [54 N. W. 637], as follows:

"In construing this statute we must consider the purpose which the legislature had in view. . . . The object was to protect policyholders and to provide a policy fair to the insured and the insurer, and avoid litigation. It was undoubtedly well known to the legislature that policy-holders do not usually examine and scrutinize their policies with the same care that they do other contracts which they make, involving their ordinary business transactions. The statute imposes a penalty upon an insurance company for issuing such a policy. . . . [Not in accordance with the standard form.] The law, so construed (as a statute rather than a contract), instead of acting to protect the insured, would

afford the surest means to oppress and defraud them, and thus defeat the very object the legislature had in view.''

We are therefore of the opinion the statutory form of fire insurance policy which was adopted by the legislature of California is deemed to be a contract, and that it is to be construed as such. It follows, in spite of the fact that the policy in the present case was the statutory form thereof, requiring sworn proof of loss, and a declaration of the origin of the fire to be furnished the company within sixty days of the date of the fire, and as a prerequisite to the commencement of an action on the policy, those provisions may be waived by subsequent declarations or conduct of the company or its authorized agents, and that the doctrine of equitable estoppel still applies to an alleged cancellation of the contract for breach thereof. ▮▮ Waiver and equitable estoppel affecting a standard form of insurance policy may be proved by oral evidence exactly as it was established prior to the adoption of the standard form of policy.

The judgment is affirmed.

Pullen, P. J., and Plummer, J., concurred.