[Civ. No. 6009. Third Appellate District.—August 30, 1939.]

STANLEY E. WATSON, Plaintiff and Appellant, v. THE STOCKTON MORRIS PLAN COMPANY (a Corporation) et al., Defendants; PACIFIC STATES SAVINGS AND LOAN COMPANY (a Corporation) et al., Defendants and Appellants.

[Civ. No. 6030. Third Appellate District.—August 30, 1939.]

STANLEY E. WATSON, Plaintiff and Respondent, v. THE STOCKTON MORRIS PLAN COMPANY (a Corporation) et al., Defendants; PACIFIC STATES SAVINGS AND LOAN COMPANY (a Corporation), Defendant and Appellant.

Erling S. Norby and A. B. Reynolds for Plaintiff and Appellant.

Mace & Tuthill for Defendants and Appellants.

THE COURT.—On rehearing, which was granted for the reason that both parties petitioned for it, we have again carefully examined the entire record. We are persuaded that the original opinion of this court correctly determines the issues presented, and we therefore adopt that opinion *in toto*.

The appellant, Stanley E. Watson, strenuously contends that both the trial court and this court erred in determining that he did not acquire title to the entire savings account involved in this litigation by virtue of his sale of that account as a pledge under the provisions of section 3000 et seq. of the Civil Code. We are unable to support that theory of the appellant for the reason that this is a suit for conversion which the complaint and findings declare occurred on March 26, 1936, and which upon adequate evidence we have held to be true. The sale of the account as a pledge did not occur until three months later. The sale of the account as a pledge was made under the express terms of a written assignment of the account which was conditional and limited the title to that portion thereof which is sufficient to pay the note and accrued interest, the costs of sale and coun-

sel fees, specifically providing that *"the surplus, if any, being payable to the undersigned"*, assignors.

The pledge was therefore limited by the express terms of the written assignment. The original opinion is therefore adopted as follows:

"The plaintiff and the defendant Pacific States Savings and Loan Company have separately appealed from a judgment which was rendered jointly against the defendants, except The Stockton Morris Plan Company, in a suit for conversion of a savings account of $4,994.26.

"The plaintiff also gave separate notice of appeal from a judgment rendered against him after the demurrer of the defendant The Stockton Morris Plan Company had been sustained without leave to amend the pleading. That judgment was to the effect that plaintiff take nothing by his action against that company.

"The court found that the passbook, representing the amount of credit which Mary C. Thomas owned in a savings account with the Pacific States Savings and Loan Company, had been assigned to the plaintiff as a pledge, only, to secure the repayment to him of money advanced to pay a note of Mrs. Thomas in the amount of $2,000, together with interest and costs, and that the plaintiff was entitled to recover only the sum of money which he had expended on that account.

"Mary C. Thomas owns a savings fund in the amount of $4,994.26, deposited with the Pacific States Savings and Loan Company, a corporation, of San Francisco, which account was represented by a passbook numbered 17–A–87. October 25, 1933, for value received, Mrs. Thomas and her son Roy S. Thomas executed and delivered to The Stockton Morris Plan Company, a corporation, their promissory note for $2,000, together with the passbook and a written assignment of the savings account, to be held as a pledge to secure the payment of the note upon the terms therein expressed. The assignment reads in part:

" 'I. I/We hereby deposit with The Stockton Morris Plan Company, as collateral security for the payment of that certain promissory note in the sum of Two Thousand Dollars, . . . the following property, to-wit:— Pacific States Savings & Loan Company Pass Book #87, $4,994.26. . . .

" '4. In case that I/we fail to make payment of said promissory note, or any installments thereon when due, . . . , then I/we hereby invest the payee hereof with the power irrevo-

cable to sell at any time the whole or part of said pledged property, either at public or private sale, at its discretion, without the giving of notice of any kind in advance of such sale. . . . The proceeds of the sale of said securities, in whole or in part, shall first be applied to the expenses of making said sale, costs of collection and attorney fees; the balance thereof shall be applied *pro tanto* to the payment of said promissory note and interest accrued thereon, . . . the surplus, if any, being payable to the undersigned. . . .

" '6. On payment of the above note and interest according to its terms, and all charges in connection therewith, this agreement shall be void and the above specified pledged property shall be returned unto me/us.'

"Two days later the holder of the note and collateral security notified the Pacific States Savings and Loan Company in writing of the assignment to the payee, as pledgee, of the ownership and possession of the pass book and savings account, and requested the transfer thereof on the books of the company in accordance therewith. The savings company acknowledged in writing the receipt of that notice and asserted that it had 'caused an entry to be made upon the books of this corporation accordingly'.

"Mrs. Thomas, being unable to meet the payments on the promissory note, requested the plaintiff Stanley E. Watson to do so and he thereupon paid the entire note in ten installments from January to November, 1934. April 10, 1934, Mrs. Thomas and her son executed and delivered to The Stockton Morris Plan Company, the payee and holder of the note, the written authorization to deliver to plaintiff the pass book and canceled note when the indebtedness was fully satisfied, which request reads as follows:

" 'By reason of Mr. Stanley E. Watson having made certain payments to you upon our obligation; namely, a $2,-000.00 note dated October 25, 1933, and secured by assignment of Pacific States Savings & Loan Company Pass Book #87; we desire that upon full payment of the said obligation, that you deliver to Mr. Stanley E. Watson the aforesaid note and Pacific States Savings & Loan Company Pass Book.

"Signed this 7th day of Feb. 1934.

" ' (Signed) MARY C. THOMAS
ROY S. THOMAS'

"January 28, 1935, after the note had been paid, The Stockton Morris Plan Company endorsed the note as fully

paid, and delivered it to Stanley E. Watson, together with the pass book and the assignment to plaintiff of the entire savings account represented thereby. In February, 1935, the plaintiff notified the Pacific States Savings & Loan Company, in writing, that the Thomas pass book and assignment of account represented thereby had been transferred to him and that he was the owner thereof. The following month Mrs. Thomas and her son filed with the Savings and Loan Company their sworn affidavits averring that she was the owner of the savings account of the principal sum of $4,994.26; that the pass book numbered 17-A-87 was lost and that the account represented thereby had not been pledged, assigned or transferred. The bank possessed facts charging it with knowledge that Mrs. Thomas was not the owner of the account and that the affidavit was false. In spite of that knowledge, the Savings & Loan Company issued to Mrs. Thomas, on March 26, 1936, a duplicate pass book for the full amount of said account, and on application therefor, paid to Mary C. Thomas, on April 2, 1935, the sum of $4,108.98, in full for said account, receiving and canceling her duplicate pass book and the account represented thereby.

"After fully paying the note and receiving from The Stockton Morris Plan Company the assignment of the pass book and account represented thereby, the plaintiff Stanley E. Watson demanded of Mrs. Thomas repayment of the money which he had expended on that account, which was refused. He then consulted his attorney, Erling S. Norby, who wrote to Mrs. Thomas three different letters, dated, respectively, February 21st, March 28th and June 2d, 1936, demanding of her repayment of the money expended by him in the aggregate sum of $2,287.87, or an absolute transfer and conveyance to him of her savings account held as collateral security therefor, which she failed and refused to do. The plaintiff then proceeded to sell the savings account as a pledge under the provisions of section 3000 et seq. of the Civil Code, and transferred and assigned the account to N. Swift, who is not a party to this suit. The pass book and account were thereafter reassigned to the plaintiff.

"Upon formal demand in writing for Mary C. Thomas and her son to pay the indebtedness then amounting to $2,-287.87, after learning of the previous issuance of the duplicate pass book, and the payment to Mrs. Thomas on April 2, 1935, of the sum of $4,108.98, in full for her account with

the Pacific States Savings & Loan Company, this suit for conversion was brought March 19, 1937. The cause was tried by the court sitting without a jury. Findings were adopted in accordance with the preceding statement of facts. The court further found that plaintiff had paid the note at the request of Mrs. Thomas as alleged, and had received an assignment of the pass book and savings account which he held as pledgee to collaterally secure him for the money expended; that with full knowledge of the assignment, by subsequently issuing a duplicate pass book and paying to Mrs. Thomas the account in full, she and her son Roy and the Pacific States Savings and Loan Company, who participated in that transaction, thereby converted the savings fund to their own benefit. Judgment was accordingly rendered in favor of the plaintiff for the ten installments paid by him on the note, together with interest thereon and the costs incurred. From that judgment both the plaintiff and the Pacific States Savings and Loan Company have appealed.

■ "The plaintiff contends that he became the owner of the entire savings account of $4,994.26 by virtue of the title acquired at the sale of the pledge pursuant to section 3000 et seq., of the Civil Code, and that he is therefore entitled to judgment for the full amount of the value of the savings account. We are of the opinion this is not true under the circumstances of this case. The plaintiff's contention is inconsistent with the language of the assignment, and with the specific finding of the court that the account was actually converted on March 26, 1936, three months before the purported sale. The language of the original assignment of the pass book and account authorizes the sale thereof for failure to pay the note according to its terms. From the proceeds of sale it is provided the costs shall be first paid and that 'the balance thereof shall be applied *pro tanto* to the payment of said promissory note and interest accrued thereon, *the surplus being payable to the undersigned'* assignors, Mary C. Thomas and Roy S. Thomas. This language constitutes a conditional assignment to secure the pledgee for the amount of money paid by him on the note, together with interest and costs of sale, only, and that the balance of the proceeds of sale shall belong and be paid to the assignor of the account, Mary C. Thomas. The complaint alleges and the court found that the conversion occurred on March 26, 1936. Section 3336 of the Civil Code

provides for the measure of damages in a suit for conversion as follows:

" 'The detriment caused by the wrongful conversion of personal property is presumed to be:

" 'First—The value of the property at the time of the conversion, with the interest from that time, *or, an amount sufficient to indemnify the party injured* for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; . . . '

"In 21 California Jurisprudence 342, section 48, it is said regarding the measure of damages in a suit for conversion:

" 'A pledgee may maintain an action for damages against one converting property pledged. . . . He may, in an action against a stranger, recover the full value of the property, as he is answerable over to the pledgor for the surplus. *But if the property is converted by the owner or by anyone acting in privity with him, he may recover only the value of his special interest in the pledge.'*

"In the case of *California Cured Fruit Association* v. *Ainsworth,* 134 Cal. 461 [66 Pac. 586], which was a suit for conversion of a crop of prunes which was 'sold and transferred to plaintiff', the court said with respect to the measure of damages:

" 'The rights of the plaintiff are to be measured by the terms of its contract. . . .

" 'The general rule in regard to the measure of damages for the conversion of goods when the plaintiff is the general owner, or is accountable over to another for the goods, is their value at the time of the conversion; *but if the plaintiff has only a special interest or limited property in the goods, he can recover from the owner of the remaining interest, or from one claiming under such residuary owner, only to the extent of his interest therein.* The amount of damages which he is entitled to recover is such as will indemnify him for the loss he has sustained in not obtaining the possession of the goods. (Sutherland on Damages, sec. 1136; *Benjamin* v. *Stremple,* 13 Ill. 466; *Sheldon* v. *Southern Express Co.,* 48 Ga. 625; *Burk* v. *Webb,* 32 Mich. 173; *Fowler* v. *Gilman,* 13 Met. (Mass.) 267; *King* v. *Bangs,* 120 Mass. 514; *White* v. *Allen,* 133 Mass. 423.) '

"Likewise, in the case of *Goldberg* v. *List*, 11 Cal. (2d) 389 [79 Pac. (2d) 1087, 116 A. L. R. 900], it is said with relation to a conditional sales contract for personal property:

" 'The rights and liabilities of the parties to a conditional sales contract are controlled by the terms of the particular contract under which they are bound. Some of such contracts contain provisions for continued liability after the retaking of possession of the property by the vendor. If so, the vendee therein should be permitted to recover against the converter of the personal property to the extent to which the vendee continues liable to the conditional sales vendor.'

■ "Under a contract like the assignment in the present case which clearly specifies that the assignee shall receive only a limited interest in the property sufficient to compensate him for the money expended and his costs, *wherein it is expressly provided the remainder of the proceeds shall be paid to the assignor*, in a suit for conversion against the vendor, as distinguished from a suit to quiet title to the property, it appears to be just and in accordance with reputable authorities that the plaintiff should be limited in the amount he may recover under such circumstances to a sum which will fully compensate him for the detriment sustained on account of the transaction.

■ "We therefore conclude the plaintiff in this case was not entitled to recover more than the sum which was awarded to him by the judgment. While it is true that under the terms of the contract the plaintiff was accountable to Mrs. Thomas for the balance of the proceeds of sale, after he had been fully compensated, he received no such balance. On the contrary, she is in possession of the entire proceeds of the savings account wrongfully received by her upon unlawfully converting and transferring the account to the Pacific State Savings and Loan Company by fraudulent means. The judgment precludes her from thereafter making a valid claim against the plaintiff for further reimbursement. The terms of the contract and the equities of the case are entirely fulfilled by the judgment which was rendered.

"The appellant, Pacific States Savings and Loan Company, contends that the evidence fails to support the finding and judgment that it was guilty of conversion of the pass book and account represented thereby; that the relationship of debtor and creditor which existed between it and the owner

of that account precludes the maintenance of an action against the debtor for converting the account.

"We are of the opinion the evidence adequately supports the finding and judgment for damages against the Pacific States Savings and Loan Company for conversion of the pass book and for misapplying and paying to the wrong person the account represented thereby.

"Conversion lies against one who without the consent of the owner wrongfully exercises dominion or control over his property detrimental to and in conflict with the right of possession or vested title which the owner has therein. (*McCaffey Canning Co.* v. *Bank of America*, 109 Cal. App. 415, 424 [294 Pac. 45]; *Lusitanian-American Development Co.* v. *Seaboard D. C. Corp.*, 1 Cal. (2d) 121, 129 [34 Pac. (2d) 139]; *Hull* v. *Laugharn*, 3 Cal. App. (2d) 310, 315 [39 Pac. (2d) 478].) In *Poggi* v. *Scott*, 167 Cal. 372, 375 [139 Pac. 815, 51 L. R. A. (N. S.) 925], it is said that:

" 'The foundation for the action of conversion rests . . . upon the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results.'

"It is true that the relationship between the depositor in a savings and loan association and the institution with which the money is deposited, is usually and primarily that of debtor and creditor, similar to the deposits of funds in a savings bank. (*In re Western States Building-Loan Association*, 50 Fed. (2d) 632; *Aberdeen Savings & Loan Association* v. *Chase*, 157 Wash. 351 [289 Pac. 536, 290 Pac. 697, 71 A. L. R. 232]; 7 Cal. Jur. 863, sec. 900; *Wells* v. *Black*, 117 Cal. 157 [48 Pac. 1090, 59 Am. St. Rep. 162, 37 L. R. A. 619]; *City of Los Angeles* v. *State Loan & Trust Co.*, 109 Cal. 396 [42 Pac. 149].)

"With respect to the relationship which exists between a depositor and a savings bank, it is, however, said in 7 Corpus Juris, page 863, section 906: .

" 'It is difficult if not impractical to define accurately, for all purposes, the legal relation that exists between a savings bank and its depositors, for while the courts have frequently stated the character of this relation, it has usually been with respect to the particular circumstances presented by the particular case under consideration. Thus it has been said that the relation is simply that of debtor and creditor; but on the other hand a number of cases consider that the relation

partakes largely of the character of a trust by the bank for its depositors; and it has also been considered that the relation of the depositor to the bank is analogous to that of stockholders in banks of discount or even in business corporations.' (See 4 Cal. Jur. 190, sec. 83.)

"It has been held, as a general rule, that, where the relationship of debtor and creditor only exists, conversion of the funds representing the indebtedness will not lie against the debtor, unless he holds the deposit in a fiduciary capacity and is bound to return to the owner the identical money. (*Rothchild* v. *Schwarz*, 28 Misc. 521 [29 N. Y. Supp. 527]; *Wright* v. *Holmes*, 100 Me. 508 [62 Atl. 507, 4 Ann. Cas. 583, 9 L. R. A. (N. S.) 769]; note, 50 A. L. R. 1171; 26 R. C. L. 1102.)

█ "Under the circumstances of the present case, however, there existed something more than a mere relationship of debtor and creditor between the plaintiff and the Pacific States Savings and Loan Company. With notice and implied knowledge that the plaintiff held the pass book and an equitable assignment of the account of Mrs. Thomas represented thereby, to secure the repayment of the money he had expended in satisfaction of the note, the Pacific States Savings and Loan Company was a party to procuring from Mrs. Thomas a false affidavit upon which it wrongfully issued to her a duplicate pass book in lieu of the original one held by the plaintiff, representing funds on deposit in the amount of $4,994.26 and accumulated interest, and then discounted and wrongfully paid to her in full satisfaction of her claim the sum of only $4,108.98. The company profited by that transaction to the extent of several hundred dollars. It may reasonably be assumed the company and Mrs. Thomas conspired to defeat the plaintiff's just claim for reimbursement of $2,287.87, paid by him at the request of Mrs. Thomas to satisfy her promissory note, and to thereby destroy the effect of the equitable assignment of the pass book and account represented thereby, which were held by Mr. Watson as collateral security for the payment of her indebtedness. The conduct of Mrs. Thomas in that transaction was certainly reprehensible. Except for the aid which was given to her by the Pacific States Savings and Loan Company, she probably would not have thus succeeded in circumventing the valid security which she had given to the friend who was kind enough to pay her debt. It appears that the affidavit

of the lost pass book was prepared for her by the company. That affidavit not only averred that Mrs. Thomas had misplaced or lost the pass book, but it also asserted that:

" 'I have not transferred, assigned, pledged or set over said Certificate (pass book), either in whole or in part, nor any of the money represented thereby, to any person, firm or corporation, and that no person, firm or corporation (other than myself) has any interest or claim upon said certificate, or the money represented thereby.'

"The essential averments of that affidavit were false, as Mrs. Thomas well knew. Both the Pacific States Company and Mrs. Thomas knew she had assigned and transferred the pass book and the account represented thereby to The Stockton Morris Plan Company to secure her note. Mrs. Thomas also knew exactly where that pass book was. She had directed The Stockton Morris Plan Company in writing to deliver it, together with her canceled note and assignment, to the plaintiff. That transaction constituted an equitable assignment of the account to the plaintiff. There is ample evidence that the Pacific States Company also knew of the delivery of those instruments to Mr. Watson. Mr. Watson personally went to the principal place of business of the Pacific States Company at San Francisco, with Miss Engel, in March, 1935. He was first introduced to Mr. Kellogg, an agent of the company who occupied a desk in an outer office of the principal place of business. The manager of the company testified that Kellogg then represented the company 'to contact people on the outside of the office with respect to complaints which they may have'. Kellogg, however, told the plaintiff that the transfer of the Thomas account on the books of the company was outside of his duties. He then took the plaintiff and Miss Engel into an inner office, and introduced them to a man who held himself out as an agent of the company with authority to transact the business of satisfying the plaintiff's claim to an assignment of the account to secure Mrs. Thomas' indebtedness to him. Neither of these witnesses remembered the name of that representative of the company. He did not advise them that they should present their claim to the branch office at Sacramento. That man informed the plaintiff the company could undoubtedly adjust the claim, but advised plaintiff that the best way to proceed to avoid controversy or trouble would be to secure a direct written assignment from Mrs. Thomas. The plaintiff

then exhibited to that officer of the company the pass book and the original assignment of the account to The Stockton Morris Plan Company, upon which there was an endorsement signed by the last-mentioned company, dated January 28, 1935, as follows:

" 'For value received, without recourse, we hereby assign our right, title, and interest in this Collateral Pledge Agreement to Stanley E. Watson.'

"The representative of the company then furnished the plaintiff with duplicate printed forms of assignment of the account from Mrs. Thomas to the plaintiff. The name of the plaintiff as assignee and the principal amount of the account were written in the forms by the agent of the company.

"The foregoing facts furnish evidence of sufficient notice to the company that the plaintiff claimed title to the pass book and account represented thereby. It was not necessary to also formally notify the company at its branch office at Sacramento as a prerequisite to the right to maintain this action. The San Francisco office was the principal place of business of the corporation.

■ "A savings account being a chose in action may be assigned with or without a delivery of the pass book though such assignment is best evidenced by a delivery of the pass book together with a formal written assignment of the account. (2 Zollmann's Banks and Banking, 356, sec. 1205.) That is exactly what was done in the present case. The assignment of the account carries with it, and confers upon the assignee, all the remedies which the assignor possessed, including the right to sue the bank for a misappropriation of the funds. (*Winchester* v. *Howard*, 136 Cal. 432, 445 [64 Pac. 692, 69 Pac. 77, 89 Am. St. Rep. 153]; 2 Zollmann's Banks and Banking, 358, sec. 1205.) The wrongful conversion of a pass book carries with it no title to the account represented thereby. The wrongful or fraudulent transfer of a pass book is void. (7 Cal. Jur. 863, sec. 900.) The real owner may maintain an action independently of his possession of the pass book, to establish his title to the account represented thereby.

■ "It is contended the plaintiff is not entitled to judgment in this case against the Pacific States Savings and Loan Company, for the reason that he failed to give a written notice of his proposed withdrawal of the funds six months in

advance, as required by section 6.01 of the Building and Loan Association Act of California. (Stats. 1931, p. 483, and amendments; 1 Deering's Gen. Laws of California of 1937, p. 554, Act 986.) It is true that the plaintiff did not furnish the company with written notice of the withdrawal of the fund six months in advance. That notice, however, was waived by the conduct of the company in issuing, upon a false affidavit, the duplicate pass book and paying to Mrs. Thomas the sum of $4,108.98 in full satisfaction of her entire claim. It is apparent that the claim of the plaintiff would not have been recognized or paid under any circumstances with or without notice. When the pass book and claim were presented for payment at the principal place of business of the company in San Francisco it was refused, not for lack of notice, but for lack of a formal executed assignment from Mrs. Thomas and her son Roy to the plaintiff. More than a year elapsed after that demand for payment was made before this action was commenced. Notice of the withdrawal of savings funds or the presenting of the pass book, which is ordinarily required, may be waived by the conduct of officers of a savings bank. (7 C. J. 867, sec. 912; *Mallett* v. *Tunnicliffe,* 102 Fla. 809 [136 So. 346, 137 So. 238, 80 A. L. R. 785, 793]; *Ruffino* v. *Queen Ins. Co.,* 138 Cal. App. 528, 535 [33 Pac. (2d) 26, 883].) In 7 Corpus Juris, *supra,* it is said in that regard:

" 'Among the usual rules of savings banks is one whereby they reserve to themselves the right to require of the depositor notice for a specified period of his intention to withdraw his deposit before he may become entitled to a return of his money. It has been said that such provision is not for the benefit of the bank solely, but that it is intended also to protect the depositor against fraud or forgery. The bank, through its appropriate officers, may waive the right to the notice of withdrawal stipulated for in the by-laws; and *if a bank refuses to pay on the ground that the money already has been paid to another, such notice need not be given.*'

"In section 919 of the last-cited authority it is further said:

" 'Such a rule (that the bank is exonerated from liability by payment of funds to the person presenting the bank book) cannot, however, relieve a bank from its obligations to exercise care and diligence to prevent payment to the wrong person; and where the bank has been negligent in this respect, a payment does not release it from liability to the true owner

of the deposit even though the person receiving payment presented the pass book.'

"Regarding the waiver of the ordinary rule requiring the presenting of the pass book when funds are withdrawn from a savings bank, it is said in the Mallett case, *supra*:

. " 'The rule as to the presentation of the bank book was one that could be waived. We hold that it was waived in this case when the bank refused Mrs. Mallett's requisition for withdrawal of her deposit, not on that ground,' but on another ground.

 "While it is true that trover will not ordinarily lie to recover money deposited in a bank where the relationship between the plaintiff and defendant is that of debtor and creditor, we are of the opinion the findings of the court in this case that the appellant, Pacific States Savings and Loan Company, was guilty of conversion is amply sustained by the evidence, since by either tort or design the bank wrongfully exercised dominion and control over not only the genuine pass book, but the account which it represents, and by discounting and cashing the account for a sum less than its real value, to the profit of the company. But, regardless of the application of that principle, the real action is one to determine the ownership and the right to possession of the pass book and the account represented thereby, to the extent of the plaintiff's indebtedness for the security of which he held an equitable assignment of both the book and the account. That was the theory upon which the cause was tried, and that is the effect of the findings adopted and the judgment which was rendered, which are adequately supported by the pleadings. The plaintiff pleaded that he is the real party in interest of the property in question and that he is the owner and holder of the pass book and the account which is represented thereby, no part of which has been paid. That is sufficient to support the judgment under the circumstances of this case, even though it be held that there was not a technical conversion of the account on the part of the Pacific States Savings and Loan Company.

"There is no merit in the separate appeal of the plaintiff from the judgment which was rendered May 5, 1937, following the order sustaining the demurrer of the defendant The Stockton Morris Plan Company to the complaint without leave to amend. That separate appeal is evidently waived since it is not discussed in the briefs on appeal. The com-

plaint alleges no cause of action against that defendant. That company merely loaned the money represented by the promissory note, to Mrs. Thomas and her son Roy, and took their assignment of the pass book and savings account as collateral security for payment of the note. The note was fully paid to that company by Watson, and transferred with the collateral security to him at the request of Mary C. Thomas. There is nothing in the allegations of the complaint creating a liability against The Stockton Morris Plan Company on account of the transaction. The demurrer was properly sustained and the judgment dismissing the action against that company was properly rendered.''

The judgments are affirmed.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court. of Appeal, was denied by the Supreme Court on October 26, 1939.