[Civ. No. 564. Fifth Dist. Mar. 23, 1966.]

Estate of EDDIE WEBB, Deceased. ALAN CRANSTON, as State Controller, etc., Petitioner and Appellant, v. VELMA NELSON, Objector and Respondent.

Charles J. Barry, Joseph D. Lear, and Ralph W. Amerson for Petitioner and Appellant.

Mazzera, Snyder & DeMartini and Robert A. Haughwout for Objector and Respondent.

BROWN (R. M.), J.—This is an appeal by the state and the state Controller from an order determining and fixing the inheritance tax payable by Velma Nelson, the transferee of *inter vivos* gifts made to her by the decedent, Eddie Webb, who died testate on February 2, 1962.

On January 17, 1962, the decedent gave to respondent by oral assignment and delivery of the passbook an account on deposit in the Bank of America National Trust and Savings Association, Sonora, California, in the sum of $19,447.20. This is the gift which gave rise to the problem presented on appeal.

On January 25, 1962, he gave to her by oral assignment and delivery of the passbook an account on deposit in the Mother Lode Bank of Sonora, California, in the sum of $6,969.62. This gift presents no problem on appeal and is relevant only because it contributes to the totality of the value of the transfers for inheritance tax purposes.

It is conceded that both gifts were made in contemplation of death and are subject to tax under the inheritance tax law of

this state. The controversy is solely as to the amount of the tax.

After the decedent's death, respondent sued the Bank of America to establish her title to the proceeds of the account there on deposit; and judgment was rendered in her favor. In connection with that litigation respondent incurred attorneys' fees in the sum of $6,948.38 and court costs of $325.03.

The duly appointed inheritance tax appraiser appraised the interest passing to respondent at the totality of the sums of the two accounts, or $26,416.92, allowed an appraiser's fee of $26.42, and showed the net transfer as $26,390.50. The tax was fixed at $2,703.58. Respondent filed objections to the appraiser's report, claiming that she should be entitled to deductions in the amounts paid as attorneys' fees and court costs. The objections were submitted to the court below upon a stipulation of admitted facts. The probate judge apparently considered the amount paid as attorneys' fees and costs in determining the clear market value of the property transferred and found the net transfer to be $20,839.49 and the tax to be $2,078.94.

On this appeal respondent contends, as the probate judge found, that the deduction of the worth of the amount of costs and attorneys' fees which respondent paid in the quiet title action subsequent to the date of death should be considered in arriving at the clear market value upon which the inheritance tax should be based. The state, on the other hand, claims such sums are deductions to be made from the clear market value and, since they are not authorized deductions by statute, they do not affect the inheritance tax.

The question framed by these adverse positions is whether attorneys' fees and costs incurred by the transferee individually for the purpose of quieting title to the property upon which the inheritance tax is based should or should not be deducted in computing that tax.

The Inheritance Tax law is found in the California Revenue and Taxation Code, Part 8, Division 2, sections 13301 et seq. It is not a tax upon property as such but is imposed upon the privilege of succeeding to property. (*Estate of Rosenfeld*, 62 Cal.2d 432, 435 [42 Cal.Rptr. 447, 398 P.2d 783]; *Estate of Radovich*, 48 Cal.2d 116, 121 [308 P.2d 14].) In reviewing the action of the probate judge, section 14512 must be borne in mind. It is there provided: "For the purpose of the hearing the report of the inheritance tax appraiser is pre-

sumed to be correct, and at the hearing it is the duty of the objector to proceed in support of his objection.''

A guideline is provided by section 13302, as follows: ''Except where the context otherwise requires, the definitions given in this chapter govern the construction of this part.''

Turning to the statutory definitions, it is conceded that the gifts are transfers within the purview of sections 13304, 13305 and 13306. Section 13311 provides: '' 'Market value,' in respect to property included in any transfer, means the market value of the property as of the date of the transferor's death, whether or not the transfer was made during the lifetime of the transferor.''

The ''clear market value'' is declared by section 13312 to be ''the market value of any property included in any transfer, *less any deductions allowable by this part.*'' (Italics added.) The valuation date is the date of death whether or not the transfer was made during the lifetime of the transferor. (Rev. & Tax. Code, §§ 13402, 13951.) Section 13981 states: ''This article is a limitation on deductions allowable. It is not intended by this article to allow as a deduction anything that does not actually reduce the amount of an inheritance or transfer.''

As to deductions, the Legislature has provided (Rev. & Tax. Code, § 13982) : ''In determining the market value of property included in any transfer subject to this part, the deductions specified in this article, *and no others,* are allowed against the appraised value of the property, if the deductions :

'' (a) Are obligations of the decedent or his estate, except as otherwise indicated in this article; and

. '' (b) Are paid by the estate or the transferee.'' (Italics added.)

The allowable deductions are set forth in sections 13986 to 13990 and include such items as funeral and last illness expenses, taxes and assessments which are a lien at the date of death, and expenses of administration. Insofar as attorneys' fees are concerned the statutory scheme limits the allowances for such services to fees incurred in the administration of the estate (§ 13988) and fees for services in connection with the preparation of estate, inheritance and income tax returns or in the adjustment and payment of such taxes (§ 13988.1).

In *Estate of Fabris*, 200 Cal.App.2d 408 [19 Cal.Rptr. 397], it was argued that the federal estate tax should be deducted in arriving at the clear market value of the interest transferred. In rejecting the contention the court pointed to the language

contained in section 13982, "In determining the market value . . . , the deductions specified in this article, and no others, are allowed against the appraised value . . ." and then stated, at page 412: "To say that to determine the market value for inheritance tax purposes, one takes the appraised value, reduces that value by the amount of the estate tax and then deducts the allowable deductions, is to give no meaning to the 'no others' clause in section 13982. It may very well be that to require an heir to pay an inheritance tax on that portion of his inheritance which is paid out for estate taxes is unfair. However, that is a matter for the Legislature to consider, not the courts, provided, of course, that in the event of ambiguity in the statute, such matter could be kept in mind in solving that ambiguity. However, we see no ambiguity in the Inheritance Tax Act. It is perfectly clear if the 'no others' clause is given effect. It is only when that clause is disregarded that any ambiguity could arise."

In reaching its conclusion the court said, at page 415:

"Thus, the scheme of the Inheritance Tax Act is that the 'appraised value' of the estate is only reduced by the deductions allowed (§ 13982). For tax purposes this provides the 'clear market value' from which statutory exemptions may be taken (§ 13402). Thus the appraised value of the estate less the allowed deductions and exemptions constitutes the base upon which the tax is levied. Any other expenditure in the estate cannot be considered in arriving at this base, and as estate taxes are not in the deductions allowed, they cannot affect this base."

In *Estate of Hite,* 159 Cal. 392 [113 P. 1072, Ann. Cas. 1912C 1014, 32 L.R.A. N.S. 1167], it was held that the value as of the date of death of property transferred under a will, although wrongfully diverted, and never in the possession of the administrator with the will annexed, and thus never actually received by the beneficiaries, was nevertheless subject to the inheritance tax. At page 395 the Supreme Court said: "It is thoroughly settled that the tax is to be assessed on the value of the property at the time of the death . . . and that subsequent appreciation or depreciation in value is immaterial."

In *Estate of Skinker,* 47 Cal.2d 290 [303 P.2d 745, 62 A.L.R.2d 1137], it was determined that since section 13988 allows as a deduction only "ordinary expenses of administration," the statutory fees and commissions are deductible but that "Extraordinary expenses of administration although borne by the estate are not a deduction for inheritance tax

purposes.'' *Skinker* also dealt with a problem arising by reason of the fact that statutory commissions and fees had been adjusted upwards by an amendment to the Probate Code enacted after the date of death of the decedent. It was held that the allowable deduction for inheritance tax purposes was the rate in effect at the date of death, which resulted in a higher tax upon the distributees.

There is persuasive authority from other jurisdictions which supports the proposition that expenditures made by an heir, legatee or donee in protecting his right to property should not be deducted from the value of the property in assessing an inheritance tax. (See cases collected at 30 A.L.R.2d 1108, and 96 A.L.R. 626.) In *People* v. *Klein's Estate,* 359 Ill. 31 [193 N.E. 460, 96 A.L.R. 622], the facts are somewhat similar. There, the decedent made a gift *causa mortis* of the value of $10,153.95 and died five days later. The administrator brought an action against the donee, claiming the property belonged to the estate. The donee had judgment and claimed attorneys' fees in excess of $3,000 which she had expended in that litigation as a deduction for inheritance tax purposes. The Inheritance Tax Act of Illinois provided for deductions specifying the indebtedness of the estate, the expenses of administration and the reasonable expenses of an administrator or executor in the performance of his duties. It was held that the amount expended by the donee for attorneys' fees in defending a suit brought by the donor's administrator could not be deducted in calculating the amount of the gift subject to the inheritance tax. It was pointed out by the court that the suit was one to contest the donee's right to the gift; that the state was not a party to the proceeding and that its benefit was but an incidental result of the donee's success in defeating the claim; that the attorneys' fee was not incurred by the administrator and was not a part of the expenses of administration; that although payment of attorneys' fees depleted the gift which the donee was entitled to receive, it did not diminish the value thereof at the time it was made; and that the measure of the tax was dependent upon the value of the interest which was the subject of the gift regardless of whether or not the donee was subsequently called upon to incur an expense in protecting her right to it.

In *In re Pike's Estate,* 168 Neb. 1 [95 N.W.2d 350], which followed *People* v. *Klein's Estate, supra,* 359 Ill. 31 [193 N.E. 460, 96 A.L.R. 622], it was held at page 355 (95 N.W.2d) that: ''It is generally the rule in all jurisdictions that in

determining inheritance taxes due, the costs and expenses of litigation independent of the estate and between distributees over their respective interests to establish the right to take the property, should not be deducted from the fair market value of the property in determining the clear market value of the taxable beneficial interest therein. We adhere to that rule and conclude that the costs and attorney's fees amounting to a total of $23,037, incurred and paid by defendant in the litigation of *Pike* v. *Triska, supra* [165 Neb. 104 (84 N.W.2d 311)], were not deductible from the fair market value in determining the clear market value of defendant's taxable beneficial interest. [Citations.]''

Turning to the respondent's arguments, it is urged that a gift of a savings account passbook constitutes a gift of the money on deposit (*Kay* v. *Karas,* 87 Cal.App.2d 600 [197 P.2d 396]; *White* v. *Bank of America,* 53 Cal.App.2d 831 [128 P.2d 600]); that a savings account is merely a chose in action; that the only way such a chose in action can be transferred by the owner is by assignment, and that the assignee, in order to perfect his rights as against the debtor bank, must notify the bank of the assignment. (*Ornbaun* v. *First Nat. Bank,* 215 Cal. 72 [8 P.2d 470, 81 A.L.R. 1146]; *Watson* v. *Stockton Morris Plan Co.,* 34 Cal.App.2d 393 [93 P.2d 855]; *Kay* v. *Karas, supra,* 87 Cal.App.2d 600.) Respondent relies upon *Estate of Rowell,* 132 Cal.App.2d 421, at page 429 [282 P.2d 163], for the proposition that: ''The basic question for determination in any case is the fair market value of the stock on the date of the transferor's death. (Rev. & Tax. Code, § 13951.) The fair market value is the price which a willing buyer would pay to a willing seller, neither being under compulsion to buy or sell, and both having full knowledge of all pertinent facts.''

Thus, the argument runs, ''clear market value,'' the basis for computing the tax, is arrived at by first determining the market value of the property as of the date of the decedent's death, in accordance with what a willing buyer, knowing all of the pertinent facts, would be willing to pay for it, and then, and only then, by applying any deductions that are allowable under the code. In this case, respondent argues, when she received the gifts *causa mortis* from the decedent, she acquired choses in action against the two banks; the Bank of America refused to honor her claim which necessitated litigation on her part in order to obtain legal recognition of her ownership of the account. She asks what a buyer of the chose in action

would have been willing to pay for it, knowing that litigation would be necessary to obtain legal recognition of the assignment, and suggests the answer that he would be willing to pay only the net amount or the balance in the account less the litigation expenses as such expenses might be estimated as of the date of death.

The fallacy of her argument is twofold. ▮ First, language in the decisional law that a savings account is a chose in action, ownership of which is transferable by delivery of the passbook, and that notice to the bank of the assignment is required in order to permit the transferee to make withdrawals from the deposit is relevant in connection with the determination of issues as to ownership in hostile claims between two individuals, or between an individual claiming to be a donee and the bank, but has no application to proceedings between the state and a donee to fix inheritance tax, which latter proceedings are governed solely by statute.

Secondly, her argument is founded upon the proposition that market value is the price at which the property to be valued will change hands between a willing buyer and a willing seller, both having full knowledge of all pertinent facts. With reference to that formula, the editors of American Jurisprudence, volume 28, Inheritance, Estate and Gift Taxes, section 359, at page 272, have this to say: ''Although this formula has been frequently used by the courts in valuation cases it has also been severely criticized by legal writers as being singularly unrealistic and unhelpful. What is attempted by the application of this formula is, of course, to fix a hypothetical fair market price where no fair market for the particular item of property exists in fact.''

Thus, in *Estate of Rowell, supra,* 132 Cal.App.2d 421, the tax case cited by respondent, the subject of the transfer was stock in a small, close corporation, which had never been traded and which had no established market value. A more certain standard of valuation absent, the court employed the device of the knowledgeable willing buyer-willing seller formula. ▮ Where, as here, the precise amount of the deposit at the valuation date is known, it is not necessary to resort to the formula. As the controller points out, the market value of the property included in the transfer could not be less than the sum on deposit, i.e., $19,447.20, regardless of who owned it or who claimed ownership of it.

▮ The question of determining the method by which the inheritance tax may be imposed is controlled by the Legislature. The Legislature has provided a comprehensive method

of calculation, which is clear and unambiguous. To make out a right to an allowance for fees and costs incurred by the respondent in the collateral quiet title action, she must be able to place her finger upon the precise provision of the statute which secures it to her, and this she cannot do.

Respondent has not established a right to the allowance, either as a consideration in finding the market value of the transfer or as an authorized deduction.

The order is reversed.

Conley, P. J., and Stone, J., concurred.