S. K. SULLIVAN, Appellee, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**Misconduct of Counsel:** NEW TRIAL. In an action against a rail-road company for a personal injury, it is improper for counsel in the opening statement to refer to the income of defendant, and where it reasonably appears that such remarks may have influenced the verdict the court should not hesitate to grant a new trial.

**Examination of Witnesses:** LEADING AND SUGGESTIVE QUESTIONS. The practice of asking leading and suggestive questions regarding a material matter, which, on objection are excluded and immediately followed by interrogatories on the same subject proper in form, is to be condemned, but the method of examination being largely discretionary with the court the same may not of necessity require a reversal.

**New Trial:** NEWLY DISCOVERED EVIDENCE. Newly discovered evidence in an action for a personal injury relating to the nature, character and extent of plaintiff's injury, and that an expert witness was deceived as to the premises upon which his testimony was based, and that plaintiff made statements and admissions subsequent to the trial inconsistent with his testimony, is sufficient to support a motion for a new trial.

*Appeal from Guthrie District Court.*—HON. J. H. APPLE-GATE, Judge.

WEDNESDAY, FEBRUARY 4, 1903.

Action to recover damages sustained as the result of a personal injury.    There was a jury trial, and verdict for plaintiff.    A motion for new trial having been overruled, judgment was entered on the verdict.    Defendant appeals. —*Reversed.*

*Carroll Wright, J. I. Dille* and *J. W. Foster* for appellant.

*Lynch & Farrington* and *F. A. Gates* for appellee.

Bishop, C. J.—Complaint is made of alleged misconduct on the part of plaintiff's attorney in making his opening statement to the jury.    Following is one of the

1. Misconduct of counsel; new trial.
statements made, as shown by the record: "I shall not attempt to state to you the income of the Chicago, Rock Island & Pacific Railway Company, the defendant in this case, because it will not be in evidence, and it is not my purpose to make any statements to you here in this opening statement, with the exception of those which will be in evidence."    This statement was objected to, and the objection sustained; the court remarking: "It is an improper statement to the jury to even call their attention to a matter of that character."    In the motion for new trial, it was urged that such conduct had been followed by prejudice, notwithstanding the ruling and remark of the court.    Manifestly, the court was right in holding that there had been a transgression of the rules of propriety.    Irrespective of the form of the statement as made, there could have been no other purpose, and it could have no other effect, than to call the attention of the jury to the fact that the defendant was a corporation operating extensive lines of railway, earning large sums of money, and inferentially, at least, therefore able to pay any amount, however large, that the jury might see fit to award as damages.    That such considerations

can have any part in the determination of the legal rights of parties who come before our courts, no one will contend for a moment. Counsel does not seek to justify his conduct, but insists that the ruling and remarks of the trial court were sufficient to overcome any prejudice that might otherwise have resulted. This may or may not be true. Jurors, as a rule, do not come to the trial of causes with minds trained to a proper discrimination between what are and what are not relevant matters; and, by reason of the lack of legal education and experience, they are oftentimes innocently, and even unconsciously, controlled in their view of causes submitted to them by influences that would have no place in the consideration of one familiar with the ethics of the law, and accustomed to the work of legal decision. As was said in *State v. Dooley*, 89 Iowa, 584. "It is well known to persons familiar with jury trials that jurors are frequently influenced in reaching a verdict by considerations which have no legitimate application in the case." And it does not always follow that a direction by the court to disregard certain improper matters, to which attention has been called during the trial, has the desired effect. The juror may honestly endeavor to keep the improper matter out of sight, and believe that he has done so, and yet unconsciously it may enter as an element into the composition of his verdict. If we expect to retain the benefits of our jury system, great care must be taken not only by the court, but by attorneys as well, to see to it that only matters proper for their consideration are brought to the attention of juries. Of course, attorneys cannot be expected to always anticipate correctly in advance what will be the rulings of the court as to the materiality or relevancy of the evidence they expect to offer. But such does not come within the principle of the rule we are considering. Where it appears that attorneys have gone so far beyond bounds as to introduce to the minds of the jury matters

which are not only irrelevant and immaterial, but are highly improper, they must expect that the record will be subjected to greater scrutiny by the court because of such violation of the rule.    While we do not say that we would reverse the case on this ground, yet we do say that, where it reasonably appears that a verdict may have been influenced by such improper conduct, trial courts should not hesitate in granting a new trial.

II.    Very frequently during the introduction of evidence for plaintiff, his counsel indulged in questions relating to vital matters that were clearly leading and

2. EXAMINA-
TION of wit-
nesses: lead-
ing and sug-
gestive ques-
tions.

suggestive.    Objection was made thereto for such reasons, and sustained by the court.    In several instances the same subject-matter was thereupon presented to the witness by a question in proper form.    To such the defendant objected on the ground that, being immediately preceded by a leading and suggestive question, the method of examination was improper, and the witness should not be allowed to answer.    This objection was overruled.    The reasons for the rule prohibiting leading and suggestive questions come readily to the mind, requiring but a moment's thought. Justification for such rule is not needed, in any sense. When a question obnoxious to the rule has been put to a witness, the mischief is done.    His mind has been directed to the specific point upon which favorable testimony is wanted, and the answer desired is generally suggested. Now, to permit an answer to a question, proper in form, where it immediately follows one that was improper, in the sense that it carried with it a plain suggestion of the answer desired, is to take away very much, if not all, the probative force of the rule forbidding leading and suggestive questions.    If a witness be favorable to the party calling him, and especially if he be a willing witness, he will have been apprised of what is expected of him, and the subsequent properly framed question can be as readily

and satisfactorily answered to the advantage of the questioner as could the prior improper one. While we should hesitate to reverse a case on this ground alone, yet, generally speaking, the practice is to be condemned. Of course, in all such cases much must be left to the discretion of the trial court. It is not to be expected that a strict adherence to a rule forbidding answers to such questions would effectuate justice in all cases. · The purpose of the questioner, as far as evident, the appearance and character of the witness, the subject-matter of the testimony called for, and all other pertinent matters appearing, should enter into the ruling. So, too, in the exercise of a sound discretion, the trial court should determine at what later stage of the examination, if at all, the subject-matter may again be called to the attention of the witness. Referring to the record before us, we do not say that all of the questions complained of were objectionable, in the sense we have been considering, but certainly many of them were so.

III.   The appellant claims to have sustained an injury by concussion to his spine while in the act of alighting in the night time from a railway train operated by the defendant company, at one of the stations on its line of road. It is alleged that the train did not stop at the station platform, and that the place where plaintiff was required to alight was dark, and, in jumping to the ground from the step of the car, he received the injury of which he complains. After the trial and judgment, and within the time allowed therefor by law, defendant filed a petition for new trial on the ground of after discovered evidence, of which proper notice was given, and a hearing had. The prayer of this petition was denied, and therefrom an appeal was taken to this court. Such appeal has been consolidated and submitted with the main case. Upon the trial of the main case a principal contention of the defendant was that the plaintiff had not suffered an injury of the character or to the

3. RAILROADS: new trial: newly discovered evidence.

extent complained of by him; that in fact his alleged
disability and pain and suffering were largely, if not
entirely, simulated. In this connection, it is proper to
state that the injury complained of was degeneration and
disorder of the nervous system, occasioned by spinal con-
cussion. There were no external marks or signs of injury,
and hence much of the evidence relating thereto consisted
of the relation of subjective symptoms by plaintiff, of the
testimony concerning complaints made by him, and of his
actions and conduct. Now, it is to be said that very much
of the so-called newly discovered evidence brought out
upon the hearing on the petition for new trial was cumu-
lative in character, and, as such, afforded no sufficient
reason for granting a new trial. But this cannot be
said as to all such proposed evidence. We cannot within
the limits of this opinion, undertake to set out even the
substance thereof. Suffice it to say that much of
it appears to have a direct bearing upon the vital question
as to the nature and character and extent of the disability
of which plaintiff complains. Other portions thereof tend
to show that at least one of the medical witnesses who
testified for plaintiff was deceived as to the premises upon
which he based his evidence, and was consequently in
error in the matter of conclusion drawn by him from such
premises. It is made to appear that this physician was
one who had attended plaintiff professionally prior to the
trial, and was one of the principal expert medical witnesses
called by him upon the trial; that he had made an exam-
ination of plaintiff, with the aid of electricity, just at the
close of the trial, and discovered conditions leading to
conclusions largely, if not entirely, at variance with those
testified to by him while a witness upon the stand. Evi-
dence is also proffered as to statements and admissions
made by plaintiff subsequent to the trial, which are wholly
inconsistent with his testimony while on the witness stand.
Thus, his family physician is brought on to say that he,

plaintiff had stated in relation to his personal appearance that he had not eaten or slept much for several days before the trial; that such was designed and intentional, and assigning as a reason that he was getting too fleshy, and did not look as a sick man should. We think a new trial should have been granted.—Reversed and remanded for new trial.