MINNIE HEIN et al., Appellees, v. WATERLOO, CEDAR FALLS & NORTHERN RAILWAY COMPANY, Appellant.

**APPEAL AND ERROR:** Findings of Facts, Etc.—Misconduct of Counsel—New Trial. The appellate court will not settle a war of affidavits as to just what did take place and what did not take place in the trial court on the subject of misconduct of counsel as a basis for new trial. *A finding of facts by the trial court is essential.*

*Appeal from Linn District Court.*—F. O. ELLISON, Judge.

WEDNESDAY, MAY 16, 1917.

REHEARING DENIED MONDAY, SEPTEMBER 24, 1917.

ACTION at law on an appeal to the district court from the award of a sheriff's jury upon the question of the dam-

ages to be paid plaintiff for the taking of a right of way through her land. There was a trial to a jury, which assessed plaintiffs' damages at $3,050. The defendant appeals.—*Affirmed.*

*Barnes, Chamberlain ,& Randall* and *Edwards, Longley, Ransier & Smith,* for appellant.

*Maurice P. Cahill* and *Redmond & Stewart,* for appellee.

PRESTON, J.—Three acres of land were taken for the right of way through 76 acres of land owned by plaintiff near Cedar Rapids. The right of way divided into substantially equal parts a timber pasture of about 35 acres, and this pasture was separated from the balance of the farm by a public highway. The highest witness for plaintiff placed the damages at $3,080, according to appellant's claim, but appellee says $3,420. Appellant claims that the witness for defendant placed the damages at approximately $1,000, while appellee says that the average of the depreciation estimated by defendant's witnesses is $1,339. As said, the award was $3,050.

It is shown that the award by the sheriff's jury was $2,200, and appellee says that this was before any dirt had been moved and before the real damage to the property by reason of a deep cut and curve became apparent. It is also shown that, on a former trial of the case, a jury awarded plaintiff $2,900. This was done after hearing all the testimony and viewing the premises. It appears that both plaintiff and defendant appealed from the award of the sheriff's jury. As we understand the record, the $2,900 verdict or award just referred to was upon the trial of defendant's appeal, although perhaps that is not very material. A new trial was granted in the first trial, and appellee says the court did so without giving any reason; at any rate it was not granted upon any alleged misconduct of counsel in argument to the

*[margin note: APPEAL AND ERROR: findings of facts, etc.: misconduct of counsel: new trial.]*

jury. Appellant's point here is that the award of the jury
in the trial of the instant case was very nearly up to the
highest estimate of the witnesses, while appellee says that
there is so little difference between the last and the first ver-
dict and the award of the sheriff's jury that this is impor-
tant to be considered in determining the merits of this ap-
peal, and as to whether there was any prejudice to appel-
lant by reason of the alleged misconduct of counsel in ar-
gument to the jury. Appellant contends that there was
misconduct upon the part of plaintiff's counsel in argu-
ment, and they say that the claim for reversal is based
squarely upon the misconduct of counsel in closing argu-
ment to the jury. Appellant cites the following Iowa cases
to sustain its position: *Henry v. Sioux City & Pac. R. Co.,*
70 Iowa 233; *Whitsett v. Chicago, R. I. & P. R. Co.,* 67 Iowa
150; *State v. Helm,* 92 Iowa 540; *Wheeler & Wilson Mfg.
Co. v. Sterrett,* 94 Iowa 158; *Sullivan v. Chicago, R. I. & P.
R. Co.,* 119 Iowa 464; *Almon v. Chicago & N. W. R. Co.,*
163 Iowa 449.

Appellee contends that the granting of a new trial on
the ground of misconduct of counsel is a matter largely in
the discretion of the trial court, and that this court will.
not interfere unless it affirmatively appears that such dis-
cretion was abused (citing Deemer Pl. and Pr., Section 647,
*Sunberg v. Babcock,* 66 Iowa 515); and contend, also, that
it must be shown that prejudice resulted to the party com-
plaining, citing *Hammond v. S. C. & P. R. Co.,* 49 Iowa
450; *State v. Miller,* 65 Iowa 60; *Hannestad v. Chicago, M.
& St. P. R. Co.,* 132 Iowa 232; *State v. Gulliver,* 163 Iowa
123; *Spaulding v. Laybourn,* 164 Iowa 277; *Withey v.
Fowler Co.,* 164 Iowa 377.

The language complained of, even though it were not
in response to argument by counsel for defendant, is not as
strong and could not be said to be as prejudicial as in some
of the cases cited by appellant. But under the record in

the case, we are of opinion that the question cannot be considered because of the state of the record. The argument complained of is that of Mr. Redmond. It appears that Mr. Redmond's remarks were taken down by the official shorthand reporter and certified. The part of his argument printed in the abstract comprises nearly two pages of the abstract. In the first part of the argument or the remarks as printed, Mr. Redmond thought defendant and counsel were mean and villainous towards the plaintiff, and later asks a number of questions which indicate that it is in response to something which had been said by counsel for the defendant. He says: "Sympathy? Prejudice? Fairness? Liberality? Generosity?" etc. After nearly two pages of the statements of Mr. Redmond as set out in the abstract, we find this objection:

"Mr. Longley: I object to the statement made by counsel as highly improper and unwarranted.

"Mr. Chamberlain: And it is an untrue statement of the facts with reference to the proceedings in this case.

"Mr. Redmond: The record will show—

"Court: As to prior proceedings, there is only one part of them before the jury, and this must be determined from the evidence and proceedings had here, regardless of any former transaction."

We refer to this because the objection seems to be somewhat indefinite as to what of the prior numerous statements of Mr. Redmond were objected to. Mr. Redmond then continued:

"They say they had to go through there. Well, now did they? Did they? Now I am not an enemy of any railroad company, or any interurban railroad company. I am friendly to them, and I see many reasons for their development. My friends on the other side say they could not get through. I do not underrate this line. I would be sorry to think I was a man to be engaged in retarding the progress of

building interurbans. But when it comes to taking the home life too, destroy it for this woman and these children, for the purpose of getting down to the city of Cedar Rapids,—is there any reason why Cedar Rapids should demand that?"

Counsel again took exception to the remarks. Not all of this matter before referred to is set out in the motion for new trial. The part relied upon in the motion for new trial is as follows:

"(4) For the reason that counsel for plaintiff was guilty of misconduct in making the following statement to the jury: 'Talk about fairness, liberality, generosity. There never was a case, a condemnation case—and maybe I have .tried as many of them as my friend Longley—or that I was acquainted with, or had any knowledge of, that was so aggravated in its damages, so villainous in its prosecution, such faithless, villainous idiocy and meanness in the management on their part to pursue this woman as they did,' and many other statements of like tenor and substance in his argument to the jury.

"(5) For the reason that the said counsel for plaintiff was guilty of misconduct in his closing argument to the jury, in that said counsel charged the defendant with gross unfairness in challenging all the farmers upon the jury except one, in peremptory challenges, which statement was not only untrue, as shown by the record of the jury selection in said case, but which was highly prejudicial and contrary to the rules of said court, under which the peremptory challenges are exercised privately by each party to the litigation, and in support of this ground, the defendant refers to the affidavit of William Chamberlain hereto attached."

An affidavit of Mr. Chamberlain, one of the attorneys for the defendant, was attached to the motion, in which he sets out the practice in the Linn district court as to peremptory challenges. We do not find that this affidavit was

made a part of the record by a bill of exceptions; but, whether it is or not, there is no finding of fact by the trial court as to the dispute between counsel as to this affidavit and others which will be now referred to, as required by the cases before such a matter may be considered in this court. These cases will be referred to later in the opinion.

Plaintiff filed a resistance to the motion for new trial, supported by the affidavits of Mr. Redmond and Mr. Cahill, attorneys for plaintiff. We shall not set out the statements in these or the rebuttal affidavits of Chamberlain and Longley in full, but enough to show that there was a square conflict in the affidavits between counsel on either side as to what took place upon the trial. Briefly, Mr. Redmond and Mr. Cahill say in their affidavit that Mr. Chamberlain in his argument to the jury referred to the award by the sheriff's jury, and that it had been paid in and that the defendant did not appeal, and that he (Chamberlain) said to the jury that, at the rate plaintiffs wanted for a right of way through their land, a right of way from Waterloo to Cedar Rapids would cost defendant three quarters of a million dollars, and in other portions that it would cost a quarter of a million, and that this would be prohibitive; that counsel Longley said to the jury in his argument that the original cost and interest of the railroad would eventually be borne by the taxpayers and patrons of the road, and some other matters; and also that both Mr. Longley and Mr. Chamberlain made profession of fairness in behalf of the railroad company to the plaintiff, and, as they say, to be even generous, and that they reiterated such statements and professions many times in their talks to the jury. In response to the affidavits just referred to, Mr. Chamberlain and Mr. Longley filed counter-affidavits, in which they deny the statements attributed to them in the affidavits of Mr. Redmond and Mr. Cahill, or some of them. We said, in *Rayburn v. Central Iowa R. Co.*, 74 Iowa 637, at 641:

"This contest of affidavits between members of the profession is unseemly, and ought not to be tolerated. The law provides for perpetuating of record such matters by bills of exceptions by which the court below can show the facts, thus avoiding the necessity of resorting to affidavits.  *  *  *  We are now satisfied that correct practice requires that the court below shall certify the facts and language complained of as amounting to misbehavior on the part of counsel."

In *State v. McClure,* 159 Iowa 351, at 354, we said that the court made no finding of facts in regard to the alleged misconduct of counsel in argument, and that such matters cannot be considered without such a finding, because the trial court was in a better position to determine the facts than this court could be.  In *Ricker v. Davis,* 160 Iowa 37, at 52, we said:

"It is quite important, in such cases, that the trial court make a finding of the facts attempted to be shown by affidavit, and to make this finding of record. Many times he alone can know the facts; and, in all cases of dispute, we are entitled to know upon what his final conclusion is based. So far as possible, appellate tribunals, in actions of law, should be relieved from settling disputed questions of fact; and, in the absence thereof, it will be assumed that the trial court was fully justified in its rulings, in so far as they involve purely fact questions."

There are numerous cases following the *Rayburn* case. We shall cite a part only of them. See *Frank v. Davenport,* 105 Iowa 588, 590; *Kinney v. McFaul,* 122 Iowa 452, 454; *State v. Clemons,* 78 Iowa 123, 125; *State v. LaGrange,* 99 Iowa 10, 12.

We shall not stop to cite authorities holding that, if the remarks of counsel in the closing argument are called out by and in response to remarks of opposing counsel,

there can be no just complaint. See, however, the case of *State v. Wilson*, 157 Iowa 698, at 722.

Under the authorities before cited, we are of opinion that the question as to the alleged misconduct may not be considered. We may add, however, and very briefly, that, if counsel for the defendant made the remarks claimed by appellee, then it was a case of "six of one and half a dozen of the other," or, as it is sometimes put now, "fifty-fifty." Of course we make allowance for the zeal of counsel on both sides in closely contested cases, and it is our experience that, as a rule, counsel pursue about the same tactics, and sometimes the one who is defeated thinks he has been abused. As said by Mr. Justice Weaver, in *State v. Gulliver*, supra, some allowances should be made and something left to the good sense and manly fairness of counsel themselves, as well as the discretion of the trial court, and the jurors must be supposed to have some capacity to distinguish between partisan oratory and analysis of testimony. Of course, where the trial court can see that counsel on one side is in good faith arguing his case according to the rules, and opposing counsel, for the purpose of seeking to obtain an advantage, goes out of the record, the court should on its own motion caution him, and if, on motion for new trial, the court is satisfied that the successful party has gained an advantage, and that the unsuccessful party has been prejudiced by remarks of counsel out of the record, then the court should promptly sustain the motion for new trial. The trial judge was on the ground and doubtless heard the arguments of counsel on both sides. He also heard the affidavits read, and it was his conclusion that no prejudice had resulted to the defendant in regard to the matters complained of. Of necessity, the matter is such that it must be left very largely to the good sense and discretion of the trial court. *Hannestad v. Chicago, M. & St. P. R. Co.*, supra.

For the reasons given, it is our conclusion that the judgment appealed from should be, and it is,—*Affirmed*.

GAYNOR, C. J., WEAVER and STEVENS, JJ., concur.