■ JOHN VARRIALE et al., Respondents, v SARATOGA HARNESS RACING, INC., et al., Appellants.—Appeals (1) from a judgment of the Supreme Court, entered January 24, 1979 in Schenectady County, upon a verdict at a Trial Term, in favor of plaintiffs, and (2) from an order of the Supreme Court at Special Term, entered July 3, 1979 in Schenectady County, which denied defendant's motion for a new trial. On October 27, 1972, plaintiff, John Varriale, age 57 at the time of trial, went to the defendants' harness racing track. Shortly after he arrived, two plainclothes security officers employed by defendants asked plaintiff to accompany them to the front office. It was suspected that plaintiff came to the track for the purpose of buying racing programs to be used at Off Track Betting (OTB) parlors, where they would facilitate betting. The programs were available only at the track. Plaintiff testified that when he refused to accompany the officers one of them grabbed his arm but he pulled away; that he then tried to leave the track but his way was blocked by security guards at two of the doors; that he did manage to leave by a third door and sat on a bench outside the grandstand; and that he became ill, requested an ambulance which was brought and he was taken to the Saratoga Hospital. He later went under the care of a physician in Schenectady. This action for false imprisonment was thereafter commenced. The case was tried in January, 1979 and the jury returned a verdict of $50,000 as compensatory damages, $25,000 as punitive damages and $10,000 for loss of consortium to the wife. This appeal ensued and defendants raise several issues urging reversal and also contend that the verdicts are excessive. Initially, we reject defendants' contention that plaintiff was not falsely imprisoned (see *Talcott v National Exhibition Co.,* 144 App 337). From an examination of the record we are of the view that the jury could properly conclude that the security officers intended to confine

plaintiff and temporarily did confine him without his consent and that plaintiff was conscious of the confinement and it was not privileged. Consequently, the necessary elements of false arrest were established *(Parvi v City of Kingston,* 41 NY2d 553, 556). We pass to the issue of punitive damages. Such damages can be awarded in an action for false imprisonment only where malice has been proved *(Voltz v Blackmar,* 64 NY 440). The record must demonstrate that there was actual malice on the part of the defendants or such wantonness or recklessness in their action as to imply or permit the inference of malice (14 NY Jur, Damages, § 177). In light of this principle, there must be a reversal of the award for punitive damages. The record reveals that a few days before the incident in question plaintiff came the Saratoga Raceway, purchased two race programs and immediately left to return to Schenectady where there is an OTB parlor. Plaintiff was warned at that time by a security officer that buying programs for the OTB parlor in Schenectady could result in his being barred from the track. Since the OTB parlor is in competition with defendants for some of the area betting money, they could reasonably conclude that the action was inimical to them. Defendants' Superintendent of Security testified that he told one of the security officers involved to bring plaintiff to him so that he could inform plaintiff that he was barred from the track and why he was being barred. Under the circumstances, defendant had the right, in our opinion, to expel plaintiff from the track *(Gottlieb v Sullivan County Harness Racing Assn.,* 25 AD2d 798; *Bass v Saratoga Harness Racing Assn.,* 286 App Div 934). Although the security officers in the present case did not have the right to forcibly detain plaintiff, we conclude that their actions did not amount to malicious conduct entitling plaintiff to punitive damages (see *Guion v Associated Dry Goods Corp. [Lord & Taylor Div.],* 43 NY2d 876). Defendants also contend that the verdicts are excessive. We agree. The verdicts are grossly excessive and, in our view, the result of improper and prejudicial remarks made by plaintiff's attorney in his summation. First, plaintiff's attorney referred to defendant's wealth, stating "you know the size and the apparent wealth of it" (defendant). While such a fact is relevant in assessing punitive damages, it has no place in assessing an award of compensatory damages. Such information should not be considered until it is first determined by the triers of the fact that plaintiff is entitled to punitive damages *(Rupert v Sellers,* 48 AD2d 265). Counsel also suggested what the size of the award of punitive damages should be, stating, "I submit $100,000." Considering the record in its entirety, we are of the view that these remarks of counsel resulted in substantial prejudice requiring reversal *(Kusisto v McLean,* 52 AD2d 674; *Depelteau v Ford Motor Co.,* 28 AD2d 1178; *Rendo v Schermerhorn,* 24 AD2d 773). Finally, defendants urge that their motion for relief from the judgment pursuant to CPLR 5015 should have been granted on the ground that some two months after the verdicts were rendered plaintiffs' original attorney of record assigned 80% of his interest in the lawsuit to the attending physican, who was the only physician to testify at trial. While we need not now consider this contention, having previously concluded that the judgment must be reversed, we will comment upon it. Although the assignment did not exist at the time of trial during the January, 1979 Trial Term, the record reveals that from April 1, 1977 through March 14, 1979 the physician had given the attorney approximately $7,500 and an additional $1,500 was given on or about March 14, 1979. This significant and disturbing factor, if known at the time of trial, might well have resulted in the jury's consideration of the physician's testimony with suspicion. In light of these errors and in the interest of

justice, there must be a new trial. Judgment and order reversed, on the law and the facts, and a new trial ordered, with costs to abide the event. Mahoney, P. J., Sweeney, Kane, Main and Casey, JJ., concur.