**Timothy HOEKSTRA and Cynthia Hoekstra, Appellees,**

v.

**FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant.**

**No. 84–1923.**

Supreme Court of Iowa.

Feb. 19, 1986.

James A. Pugh of Morain, Burlingame, Pugh & Juhl, West Des Moines, for appellant.

David A. Opheim and Greg Knoploh. of Kersten, Opheim & Carlson, Fort Dodge, for appellees.

Considered by REYNOLDSON, C.J., and McGIVERIN, LARSON, CARTER, and WOLLE, JJ.

REYNOLDSON, Chief Justice.

Defendant Farm Bureau Insurance Company has appealed from a judgment entered upon a jury's verdict awarding compensatory damages for breach of an insurance contract. Plaintiffs, Timothy and Cynthia Hoekstra, cross-appeal from a directed verdict for defendant on a count of their petition alleging a bad faith failure to settle their fire loss claim. We affirm on both appeals.

From the evidence adduced at trial, the jury could have found the following facts. Plaintiffs' home started to burn late in the afternoon on August 27, 1982. No one was at home at the time. The house reignited later in the evening and was substantially destroyed, along with plaintiffs' personal belongings and financial records. Local fire chief Havens, who had long experience in fire fighting and training in fire cause detection, determined the fire was started accidentally by "sparking strands of wire that were grounding on the dehumidifier cord."

Plaintiffs carried residential fire insurance in the form of a Farm Bureau standard homeowner's policy. Farm Bureau agent Callaway viewed the fire site the day following the fire. Hall, a company adjuster, did not appear for three days. Farm Bureau also retained Williams, an "independent cause and origin investigator," who examined the fire site after a few days.

Hall presented plaintiffs with an instrument that, among other provisions, would permit Farm Bureau to take samples from the burned home. When Hall told plaintiffs he was unsure of some of the provisions, they refused to sign the paper. Plaintiffs, however, permitted the investigators full access to the fire site and requested only that they be provided a receipt if anything was removed. Williams nonetheless took from the fuse box the breaker serving the electrical circuit for the dehumidifier without providing a receipt. Neither the breaker nor any analysis of it was returned. When Williams completed his on-site investigation he filed a report suggesting the fire was of incendiary origin.

September 9, 1982, Farm Bureau sent plaintiffs a "Sworn Statement in Proof-of-loss and inventory forms." The accompanying letter indicated plaintiffs should contact the claims supervisor for assistance in filling out the forms. October 11, 1982, plaintiffs returned the completed forms, along with a letter indicating their dismay with Farm Bureau's instructions to the local agent that forbid him from assisting plaintiffs with the papers.

Farm Bureau by letter dated October 15, 1982, requested plaintiffs submit to examinations under oath pursuant to a policy provision. After delay occasioned by illness in plaintiffs' family, their sworn statements were taken December 8, 1982.

The examinations developed that plaintiffs, misunderstanding the inventory forms Farm Bureau had sent, had used replacement values rather than present cash values in their personal property itemization. Plaintiffs were required to fill out new forms which they forwarded March 3, 1983.

At the examination plaintiffs also agreed to obtain and provide copies of their income tax returns for 1979, 1981, and 1982, and to sign an authorization that would permit Farm Bureau to obtain copies of plaintiffs' insurance and bank records from various institutions. This authorization form was forwarded to plaintiffs on December 15, 1982, together with a formal request for the tax returns. March 3, 1983, plaintiffs responded, indicating that upon advice of counsel they would not sign the authorization. Shortly, however, they did provide the tax return copies for 1981 and 1982. Farm Bureau countered with a March 21, 1983, letter requesting specific financial and insurance information, including "[c]opies of all the documents in the files of Iowa Valley Mutual Insurance Company."

March 24, 1983, plaintiffs filed a three-count petition against Farm Bureau. Count I alleged plaintiffs had complied with the insurance contract and Farm Bureau had breached the contract by failing to pay. This count prayed for compensatory damages. Count II alleged Farm Bureau acted in bad faith in failing to settle this first-party claim, and demanded compensatory and punitive damages. Count III of the petition alleged intentional infliction of emotional distress and prayed for compensatory and punitive damages.

Farm Bureau's answer to the petition asserted as affirmative defenses arson, concealment or fraud, setoff, and failure to comply with conditions precedent to suit. Farm Bureau's contentions that plaintiffs were barred from suit by their failure to comply with the disclosure conditions in the contract were raised by motions for summary judgment and directed verdict, all of which were overruled by the court.

Counts I (breach of contract) and III (emotional distress) were submitted to the jury, after the court directed a verdict for defendant on count II (bad faith). The jury rejected the count III claim, but returned a verdict for plaintiffs on count I. Farm Bureau appeals, asserting trial court erred in denying its motions for summary judgment and directed verdicts, and in other rulings during the trial. Plaintiffs have cross-appealed from the directed verdict on count II of their petition. We discuss these issues in the divisions that follow.

### I. *Issue of plaintiffs' compliance with contract.*

Farm Bureau argues "the plaintiffs were required to provide defendant with all

records and documents reasonably requested, or be barred from bringing an action to recover the proceeds of the policy," plaintiffs did not comply, and this issue was raised in the carrier's motion for summary judgment. Trial court, it contends, erred in failing to sustain this motion.

The "conditions" of Farm Bureau's insurance policy contained the following provisions:

2. Your Duties After Loss. In case of a loss to which this insurance may apply, you shall see that the following duties are performed:

. . . .

d. as often as we *reasonably require:*

(1) exhibit the damaged property;

(2) provide us with records and documents we request and permit us to make copies; and

(3) submit to examination under oath and subscribe the same.

. . . .

8. Suit Against Us. *No action shall be brought unless there has been compliance with the policy provisions* and the action is started within one year after the occurrence causing loss or damage. (Emphasis added.)

Iowa Code section 515.138 sets out the mandatory provisions of all standard fire insurance policies. The statute contains similar language to the above-quoted policy. More specifically, section 515.138 states in part:

The form of the standard policy . . . shall be as follows:

. . . .

. . . *The insured, as often as may be reasonably required,* shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same; and, as often as *may be reasonably required,* shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made.

. . . .

*No suit or action on this policy* for the recovery of any claim *shall be sustainable* in any court of law or equity *unless all the requirements of this policy shall have been complied with,* and unless commenced within twelve months next after inception of the loss.

Iowa Code § 515.138 (1981) (emphasis added).

Turning to article 2, the "cooperation clause," we note plaintiffs gave Farm Bureau's personnel complete and unrestricted access to the damaged property, and submitted to examinations under oath. The fighting issue is whether they complied with provision 2(d)(2), relating to books and records.

The record reflects that plaintiffs' books and records were destroyed in the fire. Before suit they furnished, at Farm Bureau's request, a proof of loss with a corrected fifty-six-page inventory of the damaged or destroyed personal property; a proof of loss on a prior 1980 home fire, submitted to a different insurance carrier; a letter from their bank showing account and loan balances on the date of loss; a letter from the county recorder concerning the mortgage on plaintiffs' home; a letter from a savings and loan company setting out the balance on their home mortgage; copies of 1980 and 1981 income tax returns; and a copy of a 1982 W–2 statement of earnings.

Plaintiffs furnished the 1979 income tax return about six days after the filing of their petition. Upon advice of counsel they refused to sign a blanket and open-ended authorization for Farm Bureau to obtain information from third persons relating to their financial and insurance affairs. The record indicates plaintiff Timothy Hoekstra's father may have objected to release of records relating to an inactive building partnership in which he had been involved.

In its summary judgment motion, Farm Bureau asserted plaintiffs refused to provide requested documents required under the cooperation clause, a condition precedent to suit. Plaintiffs resisted, alleging they had complied with the policy, and the demands for further documents were unreasonable. The dispute before the court thus centered on the statutory and contractual language "reasonably require."

Farm Bureau argues that because the statute is a part of the contract and the statutory language is at issue here, trial court should have determined, as a matter of law, that its requests were reasonable. Otherwise, Farm Bureau contends, the jury impermissibly would be allowed to determine a question of statutory interpretation. Plaintiffs argue the record before the court on the summary judgment motion raised a factual issue for jury determination, and trial court properly denied the motion.

■ Although statutory interpretation is a question of law for the court to determine, *American States Insurance Co. v. Estate of Tollari*, 362 N.W.2d 519, 521 (Iowa 1985), we have said it is for the jury to decide whether the conduct or acts of a party are reasonable under the circumstances. *See, e.g., Henschel v. Hawkeye-Security Insurance Co.*, 178 N.W.2d 409, 416 (Iowa 1970); *Estate of Linderholm v. State Automobile & Casualty Underwriters*, 169 N.W.2d 561, 564 (Iowa 1969); *Leytem v. Fireman's Fund Indemnity Co.*, 249 Iowa 524, 526–27, 85 N.W.2d 921, 922 (1957); *Williamson Heater Co. v. Whitmer*, 191 Iowa 1115, 1119, 183 N.W. 404, 405 (1921); *Dille v. Longwell*, 188 Iowa 606, 620, 176 N.W. 619, 623 (1920). More specifically, we have written that "[i]t is only where the facts are undisputed and where only one conclusion could be reasonably drawn from them that a question of compliance with the provision for notice is one of law." *Estate of Linderholm*, 169 N.W.2d at 564.

Farm Bureau seeks to distinguish these cases on the ground it is the statutory language, literally incorporated in the contract provisions, that is at issue here, and

we cannot abandon our duty to be the "final arbiter in the construction of Iowa statutes," *American States Insurance*, 362 N.W.2d at 521, by submitting the question of "reasonableness" to the jury.

This contention ignores the general rule that though the form of a policy is prescribed by statute, it

> is not to be treated as a legislative enactment after it has been accepted by the parties, but as a voluntary contract, which, like any other contract, derives its force and efficacy from the consent of the parties.

*Norton v. Home Insurance Co.*, 320 A.2d 688, 692 (Me.1974) (quoting *Dunton v. Westchester Fire Insurance Co.*, 104 Me. 372, 378, 71 A. 1037, 1039 (1908)). *See, e.g., Ruffino v. Queen Insurance Co.*, 138 Cal. App. 528, 537–40, 33 P.2d 26, 30–31 (1934); *Isaac Van Dyke Co. v. Moll*, 241 Mich. 255, 257–58, 217 N.W. 29, 30 (1928); *Itasca Paper Co. v. Niagara Fire Insurance Co.*, 175 Minn. 73, 76, 220 N.W. 425, 426 (1928); *Shawnee Mutual Fire Insurance Co. v. School Board*, 44 Okla. 3, 8, 143 P. 194, 196 (1914); 43 Am.Jur.2d *Insurance* § 282 (1982).

We find the authorities relied on by Farm Bureau to be inapposite. In *Horton v. Allstate Insurance Co.*, 125 Ill.App.3d 1034, 81 Ill.Dec. 584, 467 N.E.2d 284 (1984), the insured made *no* attempt either to comply with the insurer's requests for more detailed statements and additional documents, or to excuse his noncompliance. *Id.* at 1035, 81 Ill.Dec. at 584, 467 N.E.2d at 284. Other cases cited by defendant are equally unpersuasive. *See, e.g., Kisting v. Westchester Fire Insurance Co.*, 290 F.Supp. 141, 145–50 (W.D.Wis.1968) (Plaintiff refused to answer questions at examination conducted pursuant to cooperation clause and summary judgment was granted.), *aff'd*, 416 F.2d 967 (7th Cir.1969); *Southern Guaranty Insurance Co. v. Dean*, 252 Miss. 69, 72, 172 So.2d 553, 554 (1965) (Issues of noncompliance were tried to the court.); *Dyno-Bite, Inc. v. Travelers Cos.*, 80 A.D.2d 471, 472, 439 N.Y.S.2d 558, 559 (1981) (Some of plaintiffs' corporate

agents refused to submit to examination and court granted summary judgment for the insurance company.); *Lentini Brothers Moving & Storage Co. v. New York Property Insurance Underwriting Association,* 76 A.D.2d 759, 760, 428 N.Y.S.2d 684, 686 (1980) (Plaintiff stipulated that it did not comply with cooperation clause of policy and court affirmed grant of summary judgment.), *aff'd,* 53 N.Y.2d 835, 440 N.Y. S.2d 174, 422 N.E.2d 819 (1981).

■ Under the record before trial court in this summary judgment proceeding, a factual issue remained relating to plaintiffs' compliance with the "reasonably require" standard of the cooperation clause in the contract. *See Estate of Linderholm,* 169 N.W.2d at 564. Thus trial court committed no error in denying the motion for summary judgment.

II. *Issue of submitting to the jury the cooperation clause issue on a standard of substantial compliance.*

Farm Bureau contends the court erred on the issue of compliance in three ways. First, it argues the statutory language written into the contract requires strict compliance. Therefore, the court erred in instructing the jury on substantial compliance (Instruction No. 10). Second, if the correct standard is substantial compliance, it argues the court incorrectly defined the standard when instructing the jury. Third, Farm Bureau asserts evidence of "substantial compliance" was insufficient to send the issue to the jury.

Plaintiffs initially respond that Farm Bureau failed to object to the final set of jury instructions, and thus this alleged error was not preserved for review on appeal. We find no merit in this contention, as the facts bring this case within the rule of *State v. Watts,* 223 N.W.2d 234, 236 (Iowa 1974), and *State v. Baskin,* 220 N.W.2d 882, 885–86 (Iowa 1974).

■ We return to Farm Bureau's contentions. The policy held by plaintiffs provided that suit is barred "unless there has been compliance with the policy provi-

sions." Iowa Code section 515.138 states "[n]o suit ... shall be sustainable ... unless all requirements of this policy shall have been complied with." Iowa Code § 515.138 (1981). Farm Bureau argues that because the statute is incorporated into the policy the general rule of construing the policy liberally in favor of the insured is not implicated and strict compliance should be required. This position is untenable in view of the general rule we have applied in division I. When the contract has been accepted voluntarily by the parties, it is treated like any other contract, and the same rules apply.

In interpreting the standard policy as we would any other basic insurance contract, rather than the statutory policy, we have held

> where a party in order to state a good cause of action is required to allege he has performed all the conditions of the contract to be performed on his part, an allegation in the responsive pleading setting forth facts relied on to disprove performance imposes on him the burden of proving substantial performance of conditions precedent, which includes, of course, excuse or justification for delay which would otherwise be unreasonable.

*Henschel,* 178 N.W.2d at 419. *See also Estate of Linderholm,* 169 N.W.2d at 562, 565 (The policy provision required that the insured fully comply before bringing suit against the company. This court, in discussing the issue and previous case law, used the words "substantial performance.").

■ Following the "substantial performance" language of the above cases, trial court determined "compliance" means "substantial compliance" and so instructed the jury. This analysis is supported by decisions from other courts that have examined the "compliance" requirement of the standard homeowner's policy and have concluded substantial compliance is sufficient. *See Rogers v. Aetna Casualty & Surety Co.,* 601 F.2d 840, 844 (5th Cir.1979) (Fifth Circuit, applying Texas law, found Texas standard homeowner's policy re-

quired only substantial compliance with proof of loss provision to meet conditions precedent to coverage.); *Hanover Insurance Co. v. Hagler*, 532 S.W.2d 136, 138 (Tex.Civ.App.1975) ("[A] showing of substantial compliance with the [proof of loss] provision is all that is ordinarily required of an insured to avoid the consequences of failure to strictly comply with the policy provision."); *cf. Ninth Federal Savings & Loan Association v. New York Property Insurance Underwriting Association*, 99 A.D.2d 456, 456–57, 471 N.Y.S.2d 284, 285–86 (1984) (Court refused to affirm dismissal of plaintiff's action when plaintiff substantially complied with obligation to cooperate, but omitted some items from proof of loss form. Court gave plaintiff opportunity to correct.). *See also* 44 Am.Jur.2d *Insurance* § 1352 (1982) ("Provisions for the giving of notice of loss or the furnishing of proofs of loss to an insurer will be liberally construed in favor of the insured, and a substantial compliance therewith, as distinguished from a strict compliance, will suffice."). We think trial court was right when it instructed the jury on the standard of substantial compliance.

Farm Bureau alternatively contends the instruction on substantial compliance was "sufficiently ambiguous and confusing to constitute reversible error." Instruction No. 10 defined substantial compliance as

a reasonable, honest, complete, full, and meaningful compliance with the terms of the policy on the part of the insured as opposed to literal, exact or perfect compliance.

The carrier asserts on appeal that the above instruction is confusing because "complete" and "full" are similar to "literal, exact or perfect." According to defendant, the jury was not given a full understanding of this legal standard.

■ Plaintiffs respond that Farm Bureau failed to preserve error because counsel did not make a specific objection and the court was not alerted to the complaint now made. We require counsel's objection to be specific in order to afford trial court the opportunity to correct a valid complaint before the instruction is given to the jury. *Goetzman v. Wichern*, 327 N.W.2d 742, 745 (Iowa 1982).

■ At the time of taking objections to the instructions, Farm Bureau objected to the language in Instructions 8 and 10, "referring to substantial compliance," and further

I will stand on my objection that I think it should say fully—full compliance or fully complied with. And then if the court wants to instruct as to a definition of full compliance showing that legal excuses will excuse them from compliance and what those legal excuses might be, we would have no objection to that. But the objection goes to the words substantially complied or substantial compliance and the definition of substantial compliance.

We think this objection could have alerted trial court only to Farm Bureau's contention that the court should have instructed on strict and not substantial compliance. The reference to definition merely underscored Farm Bureau's contention that substantial compliance should not have been defined because it was not the proper standard. Nowhere in the objection did the carrier assert the definition of substantial compliance was ambiguous or confusing. The court's response to the objection demonstrates it was alerted only to Farm Bureau's objection that the substantial compliance standard should not have been utilized. We hold this alleged error was not preserved for our review.

Finally, Farm Bureau argues trial court erred in submitting the issue of substantial compliance to the jury because the evidence was insufficient to generate a jury question. This issue was preserved by motions for directed verdict in the course of trial.

■ The trial court should submit to the jury all pleaded issues supported by substantial evidence, and it constitutes error to instruct on an issue having no substantial evidentiary support. *Clinton Land Co. v. M/S Associates, Inc.*, 340 N.W.2d 232, 234 (Iowa 1983). In weighing

the sufficiency of the evidence, we give it the most favorable construction possible in favor of the party urging submission. *Franken v. City of Sioux Center*, 272 N.W.2d 422, 428 (Iowa 1978); *Miller v. International Harvester Co.*, 246 N.W.2d 298, 301 (Iowa 1976).

■ As plaintiffs correctly note, Farm Bureau's argument that the court erred in overruling its motion for directed verdict is similar to the one already asserted against the summary judgment ruling we examined in division I. The carrier's brief concedes "[t]he evidence submitted at trial, which related to subsection 2 of the cooperation clause, was substantially the same as the undisputed facts presented with defendant's motion for summary judgment." Moreover, plaintiffs did produce evidence demonstrating they cooperated with the fire investigation: allowing full access to their property, submitting to examination under oath, filing proof of loss forms, and providing statements and financial records. Further, even if the facts are undisputed, a jury question is generated unless only one possible conclusion could be reached when applying the appropriate legal standard. *See Bauer v. Curran*, 360 N.W.2d 88, 90 (Iowa 1984). That is not the situation here. We think the cooperation of the plaintiffs, in the circumstances disclosed by this record, were minimally sufficient to generate a jury question whether they substantially complied with the provisions of the insurance contract.

III. *Issue of the sanction limiting expert testimony.*

During opening statements, defense counsel stated Farm Bureau's expert, Boese, would testify that gasoline was found at the fire scene. Thereafter plaintiffs sought to exclude this expert's testimony that gasoline was found. The court sustained the application and limited the expert's testimony to matters indicated in defendant's answers to interrogatories, and in Boese's letter and report furnished to the plaintiffs. Those papers revealed Boese would testify he performed tests on samples taken from the fire site and found the presence of naphthas or naphtha gas. Further, trial court indicated the expert could express the opinion that gasoline is one of the petroleum distillates that when burned leaves a remnant portion within the range of naphthas. Defense counsel argued this limitation made its expert's testimony worthless. Boese did not take the stand. Farm Bureau now contends trial court abused its discretion by imposing this limitation.

■ Of course, trial court has the inherent power to enforce our discovery rules and may impose sanctions for a party's failure to obey. Exclusion of expert testimony is within the realm of sanction alternatives. *Hubby v. State*, 331 N.W.2d 690, 697 (Iowa 1983). We will reverse the imposition of a sanction only when trial court abused its discretion. "We find an abuse of discretion when such discretion is exercised on grounds or for such reasons clearly untenable or to an extent clearly unreasonable." *Id.* Thus, an abuse of discretion is rarely found. *Sullivan v. Chicago & Northwestern Transportation*, 326 N.W.2d 320, 324 (Iowa 1982).

Iowa Rule of Civil Procedure 122(d) permits a party, through interrogatories, to: require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

Iowa R.Civ.P. 122(d)(1)(A). In addition, Iowa Rule of Civil Procedure 125(a)(2) requires a party to supplement his or her response to previous discovery in relation to the identities of expert witnesses, the expected subject matter of their testimony, and the substance of their testimony.

Farm Bureau contends it was under no duty to supplement its prior response because Boese did not submit additional reports. Further, it argues that any surprise was caused by plaintiffs' lack of pretrial

preparation. The carrier points out that plaintiffs failed to depose Boese as a follow-up to the interrogatories, his letter, and report. It relies on *Sullivan*, 326 N.W.2d 320, a case in which we indicated that under rule 122(d)(1) a two-step discovery process is available for experts who are expected to testify. The first step is propounding interrogatories to ascertain the identities of the experts and substance of their testimony. The second step permits a party who so chooses to make a motion for further discovery. The court's ruling on such motion is discretionary. *Id.* at 327–28; *see* Note, *Twisting the Purposes of Discovery: Expert Witness and the Deposition Dilemma*, 36 Vand.L.Rev. 1615, 1622 (1983).

Nevertheless, we did not indicate in *Sullivan* that the two-step process is mandatory, or that failure to follow this procedure excuses another party's duty to supplement discovery responses under rule 125(a)(2). In addition, lack of additional reports by Boese does not excuse or negate the duty to supplement responses, as Farm Bureau contends.

We do not find the limited sanction imposed in this case to be exercised on grounds or for reasons clearly untenable. The answer to the interrogatory and the letter written by Boese plainly stated his tests showed the presence of "naphtha gas" or "petroleum distillates referred to as 'naphthas.'" These tests were performed on samples of carpet and flooring. The record indicates naphtha may be found in cleaning compounds and household waxes. Apparently this expert waited until a week before trial to disclose even to defense counsel that he would testify that in his opinion the tests disclosed gasoline. On the proffer of his testimony following trial court's ruling Boese testified:

> See, I'm probably somewhat in error but maybe I should have said it was the remnant portions of gasoline. Okay. But then these gentlemen here can bring in another expert. Now, you're going to cloud the whole issue by having two of us sit here for 10 hours and fight against

each other and maybe the judge will be the only person in the courtroom besides maybe a couple of lawyers that might understand what we're talking about.

There was merit in plaintiffs' contention this expert's deliberately-selected language was misleading and in violation of our discovery rules.

Trial court made every effort to avoid overbreadth in imposing this limited sanction. Plaintiffs' counsel agreed not to refer to the absence of this expert in jury arguments. We find no error.

### IV. *Issue of evidence of Farm Bureau's net worth.*

Plaintiffs claimed punitive damages in addition to compensatory damages in count III of their petition, alleging intentional infliction of emotional distress. Trial court permitted plaintiffs to read into evidence Farm Bureau's answer to an interrogatory asking its net worth. The carrier argues trial court erred in allowing its net worth into evidence because plaintiffs did not produce sufficient evidence to support a claim for exemplary damages. More specifically, Farm Bureau asserts the court should have made two determinations: First, whether the evidence was sufficient to support a claim of emotional distress; second, whether the evidence was sufficient to support a claim for exemplary damages. Farm Bureau argues that only upon an affirmative answer to the second question should the court submit evidence of net worth to the jury. The carrier contends trial court did not make a separate determination on the second step, and therefore, it was prejudiced because the jury might have improperly considered the net worth when determining liability on count I. *See* Ellis, *Punitive Damages in Iowa Law: A Critical Assessment*, 66 Iowa L.Rev. 1005, 1061–62 (1981).

Evidence of net worth is admissible on the issue of punitive damages, *Hall v. Montgomery Ward & Co.*, 252 N.W.2d 421, 424 (Iowa 1977), but not on the issue of compensatory damages. *See Sullivan*

*v. Chicago, Rock Island & Pacific Railway*, 119 Iowa 464, 465–67, 93 N.W. 367, 367–68 (1903). Even when punitive damages are involved, the evidence is admissible only when "plaintiff seeks and the evidence supports exemplary damages." *Hall*, 252 N.W.2d at 424. We note that some courts have held evidence of net worth is admissible only after the trier of fact determines there is liability for punitive damages. *See, e.g., Varriale v. Saratoga Harness Racing, Inc.*, 76 A.D.2d 991, 992, 429 N.Y.S.2d 302, 303–04 (1980); *Campen v. Stone*, 635 P.2d 1121, 1132 (Wyo. 1981); *see generally* Annot., 32 A.L.R. 4th 432 (1984) (discussing the necessity of determining or showing liability for punitive damages before evidence of defendant's net worth is admitted).

▇▇▇▇ We are not required to resolve whether trial court erred in its determination there was a jury issue on punitive damages, however, because Farm Bureau suffered no prejudice by admission of the net worth evidence. The jury found the carrier was not liable on the claim for emotional distress. Thus, no punitive or compensatory damages were awarded. Although liability was found on the count I breach of contract claim, the jury did not misuse the net worth evidence in making such a determination. Trial court, through Instruction No. 13, told the jury how to compute the amount of damages if they found Farm Bureau did not prove its affirmative defenses and plaintiffs substantially complied with the insurance contract. The instruction provided no opportunity for consideration of net worth evidence. We assume the jury obeys instructions. *Giltner v. Stark*, 219 N.W.2d 700, 704 (Iowa 1974). We hold Farm Bureau was not prejudiced and the admission of net worth evidence provided no basis for reversal. *See White v. Citizens National Bank*, 262 N.W.2d 812, 814–15 (Iowa 1978).

V. *The issue of refusing Farm Bureau's requested instructions.*

Farm Bureau argues the court's refusal to submit two of its proposed instructions to the jury is reversible error. The first instruction stated in part, "the plaintiffs' ignorance or misunderstanding of the insurance policy is no excuse for any action or lack of action on their part." The second proposed instruction informed the jury that the policy provisions were required by the Iowa Code. We reject plaintiffs' contentions that the carrier did not properly preserve these claimed errors in trial court, and proceed to the merits.

▇▇▇▇ Trial court is free to draft jury instructions in its own language as long as the instructions fairly cover the issues. The court need not use the terms suggested by the parties. *Bossuyt v. Osage Farmers National Bank*, 360 N.W.2d 769, 774 (Iowa 1985); *Wong v. Waterloo Community School District*, 232 N.W.2d 865, 870 (Iowa 1975). The court was under no duty to include the first proposed instruction. It did not instruct the jury that ignorance or misunderstanding constitutes excuse. The jury, however, was provided a detailed instruction on plaintiffs' obligation to comply with the conditions set forth in the insurance contract. In this manner, the court effectively instructed the jury that plaintiffs were required to meet the contract terms regardless of their understanding of the policy. There was no need for further instruction on this score.

▇▇▇▇ The second proposed instruction is not relevant. Whether the contract is authorized by statute can have no relevance to a jury that has been instructed properly on the respective contractual duties of the parties and has the duty to determine whether a breach occurred. Law inapplicable to the issues should not be included in the instructions. *Hamilton v. Boyd*, 218 Iowa 885, 886, 256 N.W. 290, 291 (1934). Trial court committed no error in refusing to include defendant's proposed instructions.

VI. *Issue of sustaining Farm Bureau's motion for directed verdict on bad faith claim.*

Trial court directed a verdict against the plaintiffs on count II of their petition: bad

faith failure to settle their first-party claim. Plaintiffs have cross-appealed from this ruling.

As evidence of bad faith, plaintiffs point to Farm Bureau's removal of the breaker without giving a receipt and thereafter producing neither the breaker nor any analysis made of it, the failure of an adjuster to appear at the fire site for three days because he was cleaning chickens over the weekend, the authorization to the local agent to seek and obtain a mobile home and the later retraction of the authorization after it had been obtained, the order to the local agent "to get out of it and stay out of it," the reluctance of Farm Bureau's investigator to listen to the offered information and opinion of fire chief Havens regarding the origin of the fire, an asserted manipulation of the investigator's findings, and a persistent delay, extending to time of trial, in either admitting or denying plaintiffs' claim.

We parenthetically observe that all of the above evidence was before the jury on plaintiffs' count III intentional infliction of emotional distress claim, which was rejected by the jury.

We have yet to recognize a first-party cause of action in tort for bad faith failure to pay insurance benefits. In *M-Z Enterprises, Inc. v. Hawkeye-Security Insurance Co.*, 318 N.W.2d 408, 414–15 (Iowa 1982), we noted that although the majority of jurisdictions have recognized such an action, these decisions hold that the insured must show the absence of a reasonable basis for denying benefits of the policy and the insurer's knowledge or reckless disregard of the lack of reasonable basis for denying the claims. "When a claim is 'fairly debatable' the insurer is entitled to debate it, whether the debate concerns a matter of fact or law." *Id.* at 415; *see Higgins v. Blue Cross*, 319 N.W.2d 232, 236 (Iowa 1982). In *Pirkl v. Northwestern Mutual Insurance Association*, 348 N.W.2d 633 (Iowa 1984), we indicated that if presented with the theoretical issue "we would be inclined to respond in the negative," *id.* at

636, but we noted the real issue was punitive damages, and wrote:

> [W]e are unable to accept the defendant's contention that in no instance will the denial of a valid claim by a casualty insurer support a claim for punitive damages in addition to the recovery of the loss which should have been paid under the policy. We conclude, however, that such recovery may not be predicated on action which involves no more than upsetting the justified expectations of the insured.

*Id.* We further found there was no claim of fraud in defendant's denial of the claim, nor any indication of "any acts by the defendant from which it can be inferred that it acted with malice" in such denial. *Id.* We affirmed trial court's ruling that set aside a punitive damage award.

In the case before us the trial court, citing *Higgins* and *M-Z Enterprises*, directed the verdict on the bad faith claim on the ground "the contract claim [is] a fairly debatable issue." We agree.

■ Farm Bureau had knowledge that plaintiffs sustained a large home fire two years before the one involved here. They also had information from their agent the 1980 fire was

> caused by an electric clock. State Fire Marshall was the one to determine cause. State Fire Marshall was called in at the urging of the insured.

Nonetheless, Farm Bureau had the right under the policy to pursue a cause and origin investigation which apparently took some time. Further, plaintiffs were responsible for some of the delay. Their first proof of loss was faulty, and the second was submitted months after the fire. Their examinations under oath, to which Farm Bureau was entitled, were delayed by illness in plaintiffs' family. Other financial information was not furnished until days before trial. There was a clear jury issue whether plaintiffs had satisfied the compliance provisions of the policy.

Farm Bureau invites us to end all speculation and issue a declaratory ruling that the tort of bad faith failure to settle a

first-party claim will never be recognized in Iowa. Although we have yet to encounter a case that convinces us to adopt that remedy, we are unwilling, on our limited experience with such situations, to say one could not exist. Perhaps, as Mr. Justice Stewart said about pornography, we shall know it when we see it.[1]

We are satisfied the circumstances of this case do not create a bad faith issue. Trial court was right in directing a verdict for Farm Bureau on count II.

We affirm on both the appeal and cross-appeal.

AFFIRMED.

1. *Jacobellis v. Ohio,* 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793, 804 (1964) (Stewart, J., concurring).